NATIONAL MORTGAGE & INV. CORP.

v.

SHULMAN.

No. 1466.

Municipal Court of Appeals for the District of Columbia.

Argued March 29, 1954.

Decided April 23, 1954.

Edward L. Genn and Benjamin B. Brown, Washington, D. C., with whom Samuel B. Brown and Nathan M. Brown, Washington, D. C., were on the brief, for appellant.

Peter Larsen, Washington, D. C., with whom Charles C. Collins, Robert E. Anderson and Carlton L. Saunders, Washington, D. C., were on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

At about 9:30 p. m. on February 7, 1952, Shulman left his car at a parking garage operated by appellant. When he returned for it around midnight the same evening, it could not be found. The police were notified of the theft and several days later they discovered the car in a damaged condition. Shulman brought this suit to recover the cost of repairing the car. Trial was by judge and this appeal is taken from a decision in favor of plaintiff.

 It is admitted that in this jurisdiction proof of the delivery of goods to a bailee and failure of the bailee to return them makes out a prima facie case, and that the burden is then cast upon the bailee to proceed with evidence refuting the inference.[1] Appellant garage insists that it completely met this burden, and established as a matter of law that the requisite degree of care was exercised.

With this contention in mind, we shall briefly summarize the evidence. Plaintiff proved only delivery of his car to the garage and the failure to return it. The night manager and parking manager of the garage testified to the following facts: Capitol Garage is a large, well-known parking garage with a maximum capacity of some 700 automobiles, which parks in excess of 400,000 cars a year. It contains 23 levels or floors, four of which are below the street level. At night it has only one entrance, two lanes in width, which leads into the main lobby. The upper levels can be reached only by a "main lift," two elevators, and a stairway, all of which are located together inside the main lobby. The cashier's office is so situated that from it there is an unobstructed view of both the entrance and the elevators.

It was testified that when a customer drives into the garage, the time is stamped on a claim check, a portion of which is given the customer. A "chaser" or attendant then takes the automobile to one of the levels, leaving another part of the check on the car. He returns the remaining part to the office, after noting on it the location of the car. When the customer returns, he presents his check; the time is again noted; a "chaser" takes the part of the check with the location of the car noted on it, finds the car, and returns it to the owner.[2] This system has been employed by Capitol Garage for twenty years, and was used on the night in question.

The night manager testified that, including himself, the gasoline station attendant, cashier, and 14 "chasers," there were 17 employees on duty the night of the theft, and that 311 cars were parked in the garage that night. He testified that he was in the office or lobby all evening, but did not know how appellee's car was removed from the garage, and that although persons could go to other levels for their own cars, with the permission of the management, no one received such permission from him that night. He said it would be "almost impossible" for someone not connected with the garage to go above or below the lobby level without being seen.

We have set forth several times in similar cases the methods by which a bailee may meet his burden. In one case we summarized it thus: "[I]f the bailee can establish that the loss was due to a cause in no

1. Hecht Co. v. Leite, D.C.Mun.App., 99 A.2d 87; Columbia Operating Corporation v. Kettler, D.C.Mun.App., 67 A.2d 267; Firestone Tire & Rubber Co. v. Hillow, D.C.Mun.App., 65 A.2d 338; Barclay, Inc. v. Maxfield, D.C.Mun.App., 48 A.2d 768; Quinn v. Milner, D.C.Mun.App., 34 A.2d 259.

2. It was further testified that ignition keys are left in the parked automobiles, with the exception of cars brought from hotels, which are locked; and that these cars are sometimes returned to the hotels by garage attendants.

way connected with the lack of proper care on his part, this will constitute a good defense; but a good defense may also be made out by affirmative proof that the bailee exercised that degree of care which the particular bailment called for even though he may not be able to explain or justify the loss. *Either defense presents a question of fact.*[3] (Emphasis supplied.)

■ Here the garage made no attempt to prove how the loss occurred; its evidence was intended to show that it had exercised due care in the general operation of the garage on the night of the theft. This evidence presented a question of fact, and it cannot be held that it was so compelling as to *require* a finding that due care was exercised. That the car was stolen, rather than damaged in the garage did not, even though appellant's evidence was largely uncontradicted, make the question for the trial court one of law. On the basis of the bailor's prima facie case, an inference that appellant's negligence was responsible for the theft was permissible. And while the ultimate burden of proof remained on bailor, the bailee was required, in order to prevent recovery, to offer evidence of due care sufficient in weight and quality to overcome the prima facie case. We cannot say that the bailee's showing entitled it to a favorable finding as a matter of law. The evidence revealed the general framework of the garage's operation; it did not establish the absence of negligence on the part of employees within the framework. Inferences of negligence might be drawn from the unchallenged fact that no one observed the thief enter the building or saw the plaintiff's car leave the building in violation or disobedience of the usual and authorized practice. The evidence was that certain employees were generally in a position to have seen the manner in which cars were taken out; it did not show whether it was the duty of any of them to keep watch, or if so, whether they were properly or reasonably vigilant on the night in question. Hence it would be wrong to say that there was no basis upon which the trial judge could have found appellant negligent.

Appellant argues that the trial judge erred in basing his finding on an assumption that an employee was the thief, and on the further assumption that appellant was negligent in hiring the employee. The short answer to this argument is that there is nothing in the record which even suggests that the decision was based on such assumptions.

Appellant also contends that the judge held appellant liable solely because it had full control of the automobile and the premises. But the findings of the judge, announced from the bench at the end of the trial, do not support the contention. It is clear from the findings as a whole that the judge considered that the evidence raised a question of fact, which he decided for appellee. Though he concluded by saying that the automobile and the garage were within the "entire" control of appellant, it by no means follows that he adopted what appellant calls an "erroneous legal standard" in deciding the case: there is no doubt that he based his decision on the factual issue of want of due care.

Appellant tells us that unless we reverse, garage keepers will be cast in the role of insurers, and will never have a defense in a case of this kind. This argument is no more persuasive—and no more disturbing—than appellee's argument that unless we affirm we will be authorizing every garage keeper to swear a suing bailor out of court, merely by testifying that he does not know how the bailor's car was lost or stolen. Neither of these fears is justified. We base our decision on the law of bailments as clearly developed and consistently followed in this jurisdiction. The decisions did not require the trial judge to rule for defendant, and do not permit us to reverse.

Affirmed.

3. Barclay, Inc. v. Maxfield, supra [48 A. 2d 770]. Quoted in Firestone Tire & Rubber Co. v. Hillow, supra; Columbia Operating Corporation v. Kettler, supra; Hecht Co. v. Leite, supra.