## SMITH'S TRANSFER AND STORAGE CO., Inc., Appellant,

v.

### Joseph L. MURPHY and the American Insurance Company, Appellees.

No. 1622.

Municipal Court of Appeals for the District of Columbia.

Argued June 1, 1955.

Decided June 29, 1955.

John F. Cooney, Washington, D. C., for appellant.

Denver H. Graham, Washington, D. C., with whom Albert E. Brault, Washington, D. C., was on the brief, for appellees.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Defendant appeals from a judgment for plaintiffs. Murphy sued as bailor to recover the value of chattels bailed to defendant and either lost or damaged and for which he was not indemnified by his insurer, American Insurance Company. The insurance company sued as subrogee to recover the amount by which it indemnified plaintiff for a part of his loss. Murphy was awarded. a judgment for $36.93 and The American Insurance Company for $1,319.-70. No issue is raised as to the insurer and, in view of the subrogation, we will refer only to Murphy as plaintiff in our discussion of the case.

Plaintiff was in the employ of the Institute of Inter-American Affairs, an agency of the Federal Government, during June of 1951 and was transferred on June 4, 1951, to the Quito, Ecuador, office of that agency. Plaintiff was authorized to move his family and his household and personal effects to Quito at government expense.

Plaintiff gave the following testimony relative to the movement of his household furnishings and effects. On the day before he left with his family for Quito two of defendant's trucks and approximately five of defendant's employees arrived at his home and in the presence of him and his wife assisted in packing his household effects and furniture and loaded it on the trucks. He recalled that his wife had packed some things herself, particularly a cedar chest which contained fishing tackle, a wedding and evening gown, and various bed linens, and which he himself locked prior to defendant receiving possession. When the packing had been completed plaintiff signed an inventory which had been prepared by defendant's employee. Plaintiff then proceeded by air to Quito, arriving on June 6, 1951. His effects arrived packed in two vans late in August 1951. Plaintiff testified that one of the vans was in perfect condition upon arrival, but that the other had a board seven feet long and eight inches wide that had been pried loose and renailed and a board nailed across it to keep it in place. Plaintiff stated that he immediately examined this damaged van and could see that the waterproof paper inside was undisturbed. Plaintiff then had the vans removed to his quarters and opened by employees of the Institute. Both vans were packed "to the outer boards" upon their opening, but many items of bulk and a multitude of smaller items which had been packed in cartons or in furniture were missing. The cedar chest had been forced open

and the fishing tackle, linens and dresses were missing. Instead of the items packed by his wife, the chest contained pots and pans and silverware. Among the readily identifiable items plaintiff missed immediately were three children's bicycles, a large radio, a console model sewing machine and a BB target gun. Plaintiff subsequently prepared lists of missing items of clothing, tools, household appliances, toys and other effects totalling in value more than fifteen hundred dollars. He made claim against his insurer and notified defendant of his loss and prepared a certificate of loss and damage.

At the conclusion of plaintiff's testimony defendant moved for a directed verdict on the ground that there had been no showing of negligence or lack of due care on the part of defendant, its agents or employees. The motion was denied and defendant then offered evidence tending to show an absence of negligence and the exercise of due care on its part.

Defendant's witnesses included the superintendent of its export division, one of the truck drivers and the packer in charge of packing plaintiff's property at defendant's warehouse. In substance they testified that after an estimate had been made and authorization received, defendant's employees went to plaintiff's home and prepacked and moved his household effects to defendant's warehouse. Small items were packed in furniture drawers or cardboard cartons. Most of the items placed in the cartons were not described or inventoried, but each item of furniture or carton was assigned a piece number on the inventory. When defendant's trucks were loaded the inventory was completed and signed by plaintiff, and the goods were taken to defendant's warehouse and checked off the truck and into the warehouse against the inventory. For two or three weeks the goods were stored in a lot on defendant's warehouse floor separated from other lots by a space of one and one-half feet and with a rope looped around to identify it as a separate lot. The goods were then packed in two specially constructed wooden vans lined with waterproof paper. The first van was made to a standard fourteen foot length and the second tailored to the measure of plaintiff's remaining goods. As each item was placed in the vans a record was made of the piece number and after closing and sealing a packer's list of the property packed in each van was made using the packer's records. This list showed that each piece on the inventory had been packed. The vans were then turned over to a motor carrier together with a government bill of lading furnished by the plaintiff's employer. Defendant's superintendent testified that all employees are subjected to a security screening before hire; that only employees have access to the warehouse, which is locked after working hours and subject to periodic check by watchmen. There have been no breakins at defendant's warehouse in many years, nor have any employees been discharged for dishonesty. Trucks are permitted to arrive and leave the warehouse dock during the day without inspection. Defendant's packer remembered packing the bicycles and the BB target gun and testified that the vans were loaded to full capacity with the possible exception of six or eight inches of space in the second van which had been constructed on estimate to accommodate the remainder of plaintiff's goods not placed in the first van.

In finding for plaintiff the trial court noted the testimony of defendant that the vans had been fully packed when leaving defendant's warehouse and plaintiff's testimony that they had been received in a fully packed condition, although many items of bulk were missing. The court accorded full credibility to plaintiff's testimony and dismissed the probability of the vans having been tampered with enroute on the ground that even though one van had a replaced board, the van had been fully packed on arrival. The court found no specific act of negligence on the part of defendant but concluded that negligence could be presumed on the circumstantial evidence, and made a finding of lack of proper care on the part of defendant resulting in the loss to plaintiff.

Defendant urges that plaintiff failed to show negligence on the part of defendant

and failed to impeach or contradict defendant's evidence of due care, and that the trial court erred in finding a lack of proper care on the part of defendant.

This court has consistently held that a bailee may maintain his defense to an action by the bailor by showing that the loss or injury to bailor's property was in no way connected with a lack of proper care on his part, or by affirmative proof that he exercised that degree of care which the bailment called for, even though he may not be able to explain or justify the loss. "Either defense presents question of fact." National Mortgage & Inv. Corp. v. Shulman, D.C.Mun.App., 104 A.2d 420, 422, and cases cited.

Plaintiff made a prima facie case by showing the bailment and the loss of his property. This is the rule in the law of bailments established in this jurisdiction. Sims v. Roy, 42 App.D.C. 496. A presumption or inference of negligence or fault on the part of the bailee is raised by the delivery of property to its exclusive possession and control and its subsequent loss or damage. The function of the inference or presumption is to control the result by rule of law in the absence of evidence in rebuttal. When evidence in rebuttal is introduced by the bailee the presumption or inference disappears from the case as a rule of law but retains the probative weight of an inference of fact. Wigmore on Evidence (3rd ed.), § 2491; Richmond Sand & Gravel Corp. v. Tidewater Const. Corp., 4 Cir., 170 F.2d 392, 394. The Supreme Court has said that the bailee must adduce sufficient evidence to raise doubts as to the validity of the inference "which the trier of fact is unable to resolve." Commercial Molasses Corp. v. New York T. Barge Corp., 314 U.S. 104, 62 S.Ct. 156, 161, 86 L.Ed. 89. The above authorities agree that the burden of proof on the issue of negligence is not shifted to the defendant but remains always with the plaintiff. The burden of proceeding with sufficient evidence to rebut the inference or presumption of negligence or fault, however, does shift to defendant.

Defendant clearly produced sufficient evidence of due care and absence of negligence on its part to remove the technical force of the presumption or inference in plaintiff's favor as a rule of law controlling the result; but the inference of loss of plaintiff's goods while in defendant's possession and control remained in the case to be accorded that probative force to be assigned it by the trier of fact in weighing all of the evidence before the court. The doubts raised by defendant's evidence of due care were resolved against defendant by the court in arriving at its conclusion based on uncontradicted testimony that the vans left defendant's warehouse fully packed and arrived in plaintiff's hands fully packed, but with a multitude of items, some of large size, missing. We cannot rule that this conclusion was erroneous.

Affirmed.