Guy Gilbert Ribaudo, J.
This case involves the question whether a parking lot operator at La Buardia Airport is liable for damage to plaintiff’s automobile caused when it was stolen from the lot, where plaintiff parked, locked and left it.
The lot involved has fences on two sides and there is a stream or gully at the rear. There is an unfenced curb running about 800 feet along the front of the lot.
Anyone could walk into the lot at any point along the front, and a car could be driven over the curb onto the main roadway. In fact an American Airlines employee is said to have seen the plaintiff’s car being driven over the curb. Admittedly defendant was not concerned with the safety of the cars left on the lot, and only a small area of the lot and a short distance of the unfenced front of the lot could be seen from the toll booth where there was an attendant.
*837 On the question of liability defendant’s position is (1) that, because the car was locked and the key taken by plaintiff, there was no bailment and no responsibility, (2) that the disclaimer of liability for loss or theft printed on the parking ticket bars recovery, because plaintiff admittedly read it before he parked his car, and (3) that there is no presumption of negligence and plaintiff has failed to prove any.
For the reasons stated hereinbelow I do not agree with the position taken by the defendant.
At the outset it should be noted that the parking lot involved here is not one of the various types of lots one can choose on so many of our city streets, all of which are licensed by the License Department of the City of New York. Were this the fact the standard of responsibility would be clear, since by regulation of the License Commissioner under authority of the Administrative Code of New York City parking lots must be fenced, unless special permission to the contrary is given by the License Commissioner (paragraph 12 of the Bules and Begulations for garages and parking lots adopted by the License Commissioner pursuant to authority vested in him under section B32-259.0 of the Administrative Code of New York City). Subdivision b of section B32-257.0 of the Administrative Code provides: “ Vehicles shall be stored or parked on the licensed premises in such manner as shall be prescribed by the rules and regulations of the commissioner, for the purpose of safeguarding persons and property and permitting adequate inspection of the premises.”
Belating the requirement to fence parking lots to this declared purpose “of safeguarding * * * property ”, it can be seen that the fencing of parking lots is a precautionary safeguard that every parking lot owner must comply with, by regulation and statute.
Thus the failure of a parking lot owner to fence his lot on any side would be some evidence of negligence which the ‘1 [trier of facts] could take into consideration with all other evidence on the subject ” (Major v. Waverly & Ogden, 7 N Y 2d 332, 336).
Were this a city parking lot I would rule that the failure of the defendant, as a parking lot operator, to fence the lot on its 800-foot front in and of itself would be sufficient evidence to warrant a finding of negligence on the part of the defendant.
But, should the fact that the parking lot here involved was being operated under permit from the Port of New York Authority establish a different level of responsibility? I think not.
A person who goes to an airport has no choice as to where to park his car. He must park it in one of the prescribed lots. He *838 cannot say he would not like to entrust his car to the operator of an unfenced, unattended lot, or that he would prefer a covered garage — choices he could have elsewhere. He is forced to park in one of the prescribed lots at the airport.
This factor should be given due weight in assessing a measure of responsibility similar to that imposed by the City of New York upon parking lot operators in all other parts of Queens, wherein La Guardia Airport is located.
There may also be considered not only the failure to fence the lot but also the admitted indifference of the defendant to the safety of the cars left on the lot, and the fact that most of the parking lot and most of the unfenced front of it could not be seen by the attendant who sat in his ivory tower.
The evidence thus warrants a finding that defendant was negligent,
“ While ordinarily loss by theft will constitute a good defense, it will not stand in the face of proof to the effect that the negligence of the bailee contributed to and made the theft possible.” (Arnold v. Kensington Plaza Garages, 179 Misc. 697, 699.)
In the case of Henderson v. Park Cent. Motors Serv. (138 Misc. 183) the court held that plaintiff had sustained the burden of proving negligence of the defendant, pointing out that plaintiff established that there was an open door at night on the ground floor of the garage where plaintiff parked his car with no one guarding it, and the night superintendent permitted three men to enter the garage and play cards in the chauffeur’s room on the second floor until after midnight, although two of them were strangers to him, and it was these two men who stole the plaintiff’s ear after 1:00 a.m.
In the language of the court in Potomac Ins. Co. v. Donovan (274 App. Div. 666, 669 [4th Dept.]): “ While the burden remains at all times upon the plaintiff to establish the defendant’s negligence, that does not mean that he is required to adduce evidence pointing out the precise negligent act or omission. The surrounding facts and circumstances may be such as to permit an inference of negligence. Where the situation is such that in the ordinary course of events the theft would not have occurred but for want of proper care on the part of the bailee, his failure to show that he had taken such precautions as ordinary prudence would dictate, where the proof, if it existed, would be within his power to produce, may subject him to the inference that such precautions were omitted ”.
Defendant’s failure to fence the front of the lot or to take any precautions for the safety of cars parked on the lot cannot be said to be consonant with proper care.
*839 Defendant argues that the fact that the car was locked and plaintiff took the key absolves defendant of any responsibility as bailee. But even in the case of Osborn v. Cline (263 N. Y. 434, 437) cited by the defendant, the court said: “ Whether a person simply hires a place to put his car or whether he has turned its possession over to the care and custody of another depends on the place, the conditions, and the nature of the transaction. * * * We are of the opinion that the jury should have passed upon this question in this case ”. (See, also, Potomac Ins. Co. v. Donovan, supra.)
The fact that plaintiff’s car was locked and he took the key does not require a finding, on the facts of this case, that the car was not turned over to the defendant’s care. In the case of Dunham v. City of New York (264 App. Div. 732 [2d Dept.]) where plaintiff sued to recover for the loss of his car, which he parked on a parking field operated by the City of New York at the New York World’s Pair, the court affirmed an order of the Appellate Term, which reversed a judgment for the defendant. Apparently the majority disagreed with Justice Adel’s statement in his dissent: “ The proof established that the plaintiff simply hired a place to put his car and did not turn its possession over to the care and custody of the defendant. Parking the car in the lot, securely locked, does not constitute turning over its possession so that a finding may be made that the transaction was a bailment.”
As trier of the facts, upon all the evidence above adverted to, I find that plaintiff’s car was turned over to the care and custody of the defendant as bailee. This was not a gratuitous bailment. The plaintiff, who paid a fee, was in fact a bailor for hire. The fact that the fee was small is beside the point and further plaintiff was not offered a choice of rates. In any event, placing the label of “ bailment ” or “ license ” upon the transaction is considered immaterial to my finding of liability, since the defendant did not exercise sufficient care to protect the property of its customer, the plaintiff. (Cf. Rubin v. Forwarders Auto Trucking Corp., 111 Misc. 376 [App. Term, 1st Dept.].)
The statement on the ticket issued by the defendant that this was a license is entirely self-serving under the circumstances here involved, including lack of choice to park or not to park.
In any event the defendant’s attempt to absolve itself of any liability for negligence by any statement on the ticket, is illegal and void, even though plaintiff was fully aware of it before he parked his car in the lot.
Section 89-b of the General Business Law specifically provides: “No person who conducts or maintains for hire or other *840 consideration * * * a parking lot * * * may exempt himself from liability for damages for injury to person or property resnlting from the negligence of such person, bis agents or employees ® * * in its [the vehicle’s] ® e parking * * * or in the conduct or maintenance oE such * "" ~ paiking lot * * * and any agreement so exempting such person shall be void.”
When the Legislature said “No person,” it meant just that. There cannot be read into this statute an exclusion of persons operating under permit from the Port of New York Authority; nor is there evidence of any such exclusion from amenability to the laws of this State contained in the law establishing the Port of New York Authority.
In view of all of the foregoing, judgment is awarded in favor of the plaintiff for $473.74, with interest from September 6,1956. (See Consolidated Box Co. v. Penn, 15 Misc 2d 705 and the cases cited therein on the question of damages.)