**SARBOV PARKING CORPORATION,**
**Appellant,**

v.

**MOTORS INSURANCE CORPORATION,**
**Appellee.**

**No. 4417.**

District of Columbia Court of Appeals.

Submitted Jan. 13, 1969.

Decided June 30, 1969.

Pierre E. Dostert and Samuel C. Borzilleri, Washington, D.C., for appellant.

Holbrook L. Potter and Hugh Lynch, Jr., Washington, D.C., with whom Anthony Paul Flask, Washington, D.C., was on the brief, for appellee.

Before KELLY, FICKLING and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

This is an appeal from a judgment for the subrogated plaintiff after a trial without a jury in a negligence action arising from a theft of the transmission from a car owned by plaintiff's insured while on a commercial parking lot. The insured, Harry B. Erb, entered appellant's parking lot one evening, took a claim check from an automatic machine, and parked his car about 100 feet from the attendant's office, in a well-lighted area.[1] This particular

---

1. The facts are contained in an "Agreed Statement on Appeal."

area was in full view of the attendant from the office, which had windows on all sides. Erb locked the car doors and retained the keys. Later that evening he returned to his car and discovered that the transmission had been stolen. The lot attendant informed Erb that a man who claimed to be his brother had removed the transmission.

It developed that while Erb was gone an unidentified customer told the attendant that "something was happening to a car in the rear of the lot." The attendant went to the car and saw a man looking into the engine compartment. He told the attendant the car was owned by his brother and "there was something wrong with it." Although the attendant had seen this man on the lot before, he accepted the explanation, conducted no inquiry and returned to his office. The attendant made no further observation of the stranger's activities on the lot though he knew he was not the owner of the car. He had instructions to call the police when he observed a car "being tampered with on the lot by unknown persons or under suspicious circumstances"; but he did not do so.

The trial court found that the legal relationship between the lot owner and Erb was that of lessor and lessee, and that the lessor owed Erb ordinary care for the protection of the vehicle while on the lot. The court found, further, that appellant's conduct amounted to gross negligence and that it was the proximate cause of the damage to the car.

Relying on dicta in this court's decision in 1420 Park Road Parking, Inc. v. Consolidated Mutual Insurance Co., D.C.Mun. App., 168 A.2d 900 (1961),[2] appellant contends that being merely a lessor rather than a bailee it owed no duty of care over Erb's vehicle and, therefore, the omission to act by the lot attendant was not negligence.

■ Usually, "parking lot" cases fall into two categories. In the first type, an attendant normally takes control of the car at the entrance, gives the owner a claim check, places a duplicate of this on the car, parks the car and retains the keys. This procedure is ordinarily held to create a bailment.[3] In the other category, the owner commonly receives a claim check at the entrance, parks his car, locks it if he desires, retains the keys, and surrenders the check and pays the charge when he drives his car through the lot exit. This is referred to as "park and lock" and, in most cases, it is held not to create a bailment. Rather, these factors are thought to create either a lease or license relationship.[4] It is the "park and lock" arrangement with which we are here concerned. Both parties on appeal agree to the trial court's finding of a lessor-lessee relationship.

■ It is generally held that a landlord has no duty to protect a tenant's property from criminal acts of third persons. Ramsay v. Morrissette, D.C.App., 252 A.2d 509 (1969); Applebaum v. Kidwell, 56 App. D.C. 311, 12 F.2d 846 (1926). This rule is

2. That case involved this same parking lot.

3. See, e. g., Banachowski v. Saunders, D.C. App., 187 A.2d 891, 7 A.L.R.3d 924 (1963); Nat'l Mortgage and Inv. Corp. v. Shulman, D.C.Mun.App., 104 A.2d 420 (1954). See also, Annot., 7 A.L.R.3d 927, 934–36 (1966).

4. See 1420 Park Road Parking, Inc. v. Consol. Mut. Ins. Co., supra, 168 A.2d at 901; Quinn v. Milner, to Use of Hartford Fire Ins. Co. D.C.Mun.App., 34 A.2d 259, 260 (1943); Allright Phoenix Parking, Inc. v. Shabala, 6 Ariz.App. 21, 429

P.2d 513, 516 (1967); McFarland v. C.A.R. Corp., 58 N.J.Super. 449, 156 A.2d 488, 489 (1959); Taylor v. Philadelphia Parking Authority, 398 Pa. 9, 156 A.2d 525, 527 (1959). One writer analogizes the "park and lock" situation to a business invitor-invitee status. Note, 32 Mo. L.Rev. 326, 329 (1967). Some decisions hold to the bailment theory. See e. g., Sherber v. Kinney Systems, Inc., 42 Misc. 2d 530, 248 N.Y.S.2d 437 (Civ.Ct.1964); Nargi v. Parking Associates Corp., 36 Misc.2d 836, 234 N.Y.S.2d 42 (Civ.Ct. 1962).

not invariable, however. *Cf.* Kendall v. Gore Properties, Inc., 98 U.S.App.D.C. 378, 236 F.2d 673 (1956) and Ramsay v. Morrissette, *supra.*

■ In this case, the parking lot attendant witnessed the stranger tampering with the car and took no precautions whatsoever to protect the car owner from the resultant theft of the transmission. He was instructed by the lot owner to call the police under such circumstances, but failed to do so. The owner's instructions indicate his realization that he should take some precautions to protect cars parked on his premises from theft and vandalism.

In *1420 Park Road, supra,* relied upon by appellant, the windshield of an auto was broken while on the parking lot. The cause of the damage was apparently not shown by either party. The trial court ruled that the parking lot owner was a "bailee for hire" and was required to overcome a presumption of negligence due to the damage to the car while in its possession. Because the lot owner failed to carry this burden, the trial court found for the plaintiff. In reversing, this court held that a bailment was not established because the element of control by the parking lot owner over the car was lacking; and that, consequently, the car owner was not enti-

tled to a presumption of negligence against the parking lot owner.

■ This case is distinguishable from *1420 Park Road,* because, unlike here, there was no proof in *1420 Park Road* of specific acts of negligence by the lot attendant. Under the circumstances of this particular case, we think that once the lot owner's agent was on actual notice of the car tampering, Erb was entitled to the exercise of ordinary care by the attendant to avoid a theft. Even in a non-bailment relationship, a car owner is owed that much.[5] The attendant failed to take any steps reasonable under the circumstances, such as observing the activities of the stranger, requesting indication of his authority to remove anything from the car or calling the police as instructed by the lot owner.

Since we agree with the trial court to the extent that the car owner was owed ordinary care under the specific facts of this case, this leaves only whether appellant was negligent and, if so, whether this was the proximate cause of the damage to the car. We conclude that the trial court's findings of gross negligence and proximate cause were supported by substantial evidence and are not clearly erroneous.[6]

Accordingly, the judgment is

Affirmed.

---

5. In so deciding, we do not rule beyond the facts of this particular case. With the increase of the number and variations of parking lots and garages throughout the country, some states have defined by statute the legal obligations of lot and garage owners to car owners. *See, e. g.,* Neely v. Tamburello, 187 So.2d 526 (La.App. 1966). No such legislation has been enacted in this jurisdiction as yet.

6. D.C.Code 1967, § 17–305(a).