**PARKING MANAGEMENT, INC.,**
Appellant,

v.

**Mark GILDER, Appellee.**

**No. 7581.**

District of Columbia Court of Appeals.

Argued Jan. 22, 1974.

Decided Oct. 29, 1974.
Rehearing En Banc Granted and
Opinion Vacated Dec. 19, 1974.

---

Herman Miller, Washington, D.C., for appellant.

Edward L. Genn, Washington, D.C., for appellee.

Before REILLY, Chief Judge, and FICKLING and GALLAGHER, Associate Judges.

PER CURIAM:

This is an appeal from a judgment awarding appellee damages in a nonjury negligence action. Appellant was held liable for damage done to the trunk of appellee's car while it was parked on appellant's commercial lot. On appeal appellant contends (1) that the trial court erred in finding a bailment existed and (2) that there was no proof of specific acts of negligence on its part. We agree and reverse.

The undisputed facts are that appellee received a claim check at the parking lot in question, parked his car, locked it, and retained his keys. Upon his return to the lot, appellee found that the trunk of his car had been damaged. This is commonly known as a "park and lock" case, and we have held under similar facts that no bailment is created; rather, either a lease or license relationship is created. Sarbov Parking Corp. v. Motors Insurance Corp., D.C.App., 255 A.2d 112, 113 (1969); 1420 Park Road Parking, Inc. v. Consolidated Mutual Insurance Co., D.C.Mun. App., 168 A.2d 900, 901 (1961); Quinn v. Milner ex rel. Hartford Fire Ins. Co., D. C.Mun.App., 34 A.2d 259, 260 (1943). The trial judge erred, therefore, when he found a bailment existed which entitled appellee to the benefit of a presumption of negligence against appellant.

In the past we have discussed the extent of a parking lot owner's obligation to protect a customer's car from the criminal acts of third parties in a "park and lock" arrangement. It has been held that no such obligation exists unless the owner or one of the attendants employed by him observes or is put on actual notice that someone is tampering with a customer's car, and then fails to exercise ordinary care in order to prevent such person doing damage to the car. *Sarbov, supra,* 255 A.2d at 113, 114, and cases therein cited.

In the instant case there is no evidence of specific acts of negligence by the lot attendants. Appellee testified that when he returned to the lot he discovered his car trunk had been damaged by an apparent attempt to pry it open. He conceded, however, that he had no evidence showing that any unauthorized person had entered the parking facility. Nor did he have any evidence that appellant's employees tampered with the car. Mr. Jenkins, one of the lot attendants on duty during the time the car was parked, testified that he did not see any suspicious persons in the vicinity of appellee's car; nor was he aware of any damage to the car until the problem was pointed out to him by appellee. Since there is no evidence that the lot attendants were on actual notice of the car tampering, we hold that appellant is not liable for the damage done to appellee's car. *Sarbov, supra.*

Reversed.

GALLAGHER, Associate Judge (dissenting):

Appellee parked his car at the Parking Management, Inc. parking area which is enclosed within the Washington Hilton hotel in this city. He locked his car and kept the keys. He then opened the trunk in

plain view of a group of employees and placed his lady friend's cosmetic bag in it and then locked the trunk. The rear of the car was exposed to the aisle. Upon his return, he found the trunk lid damaged from being pried and reported it to the management.

The principal question for the court, initially at least, is the legal relationship between the parties. More particularly, it must be determined at the outset whether the parking lot operator owed the car owner any legal duties and, if so, what they were. In order to resolve this, it is necessary to examine the nature of the parking operation. It is not enough simply to ascertain whether the car owner locked his car and kept the keys. These are material factors to be considered but it does not end the inquiry.

When the car owner entered he was handed a ticket by one of three attendants and directed to a particular parking space. There were about 160 lined spaces on one level and about 150 lined spaces on a second level. These were self-service to the extent that the driver places the car in a space at the direction of an attendant. If additional spaces are needed, *the aisle spaces are utilized and* according to the parking operator (PMI) *these are "not self-service,"* which may only be construed as meaning that the attendants park the cars in the aisles and retain the keys.[1]

The personnel situation at the garage at the time was that there was a manager, a cashier, and three attendants. According to the Supervisor of Plans and Operations for Parking Management, Inc. (PMI):

A PMI employee is a uniformed employee. He is a public relations man for our company. He is a service man for our company. . . . He is there to control the parking, guide the parking *and control whatever is necessary in respect to housekeeping and any general operations that might pertain to the parking industry.* (Emphasis added.)

In respect to thefts at the garage the Supervisor said there were some claims for thefts but those were more than fifteen days before this incident. He said that thefts are "not necessarily a big problem, but, of course, damages and thefts, *security is a major concern."* (Emphasis added.) He also agreed that watching the area and acting as a "kind of security" is part of the employee's job.

The trial court in this non-jury case concluded that the evidence established either (a) a bailment or (b) that the protection which the patron was led to believe existed was not provided. The court thereupon entered judgment for the car owner.

Appellant contends this was error since appellee parked his car in the parking enclosure and retained the car keys, and consequently a bailor-bailee relationship did not exist, citing Quinn v. Milner, D.C. Mun.App., 34 A.2d 259 (1943) and subsequent decisions of this court.[2] Appellant does not address itself to the alternative finding of the court concerning the lack of protection which the car owner was led to believe existed.

Appellant is correct in its assertion that this court has stated in those cases that a bailment did not exist where the car owner (a) parked his car and (b) kept the car keys *(but see* 1420 Park Road Parking, *supra,* 168 A.2d at 901–902 (Judge Hood, dissenting)). As I read those cases, however, there were principally involved simply those two factors and nothing more. Here, there was additional evidence on the parking arrangement involved, *e. g.,* the

---

1. There is thus a mixed arrangement here, one being self-service and the other non-self-service, depending upon the volume of customers. Under appellant's theory of the case, there would be a bailment for the cars parked in the aisle but not for those in the lined spaces.

2. E. g., McClellan v. Allstate Insurance Co., D.C.App., 247 A.2d 58 (1968) and 1420 Park Road Parking, Inc. v. Consolidated Mutual Insurance Company, D.C.Mun.App., 168 A. 2d 900 (1961).

presence of 5 employees to service the customers in an enclosed area of the hotel and the acknowledgment that security of the cars is a major concern of PMI, which, according to the PMI supervisor, includes watching for thefts and tampering with the vehicles, as well as the acknowledged exertion of "control . . . in respect to housekeeping and any general operations that might pertain to the parking industry." Although, strictly speaking, the finding that a bailment existed here may be open to question, I think (a) the trial court nevertheless reached the correct result,[3] and (b) this result was not precluded by our prior decisions.

The car owner was entitled to expect that reasonable care would be utilized to prevent tampering with his auto; and this was hardly an unreasonable expectation as the management of PMI testified this was in fact among the duties of the employees. In the decisions relied upon by appellant no similar evidence was considered so those cases are distinguishable on the facts. Consequently, I think the evidence permitted the court to find there was a lack of protection which the car owner was led to believe existed. This being so we must accept this finding as it is not clearly erroneous.

Turning to the law in general on the liability of parking lot owners in "park and lock" cases, there appears to be emerging a different school of thought which strikes me as enlightened, e. g., Sparrow v. Airport Parking Company of America, 221 Pa.Super. 32, 289 A.2d 87 (1972); Nargi v. Parking Associates Corp., 36 Misc.2d 836, 234 N.Y.S.2d 42 (N.Y.City Civ.Ct. 1962); Ellish v. Airport Parking Co. of America, Inc., 42 A.D.2d 174, 181, 345 N.Y.S.2d 650, 657 (1973) (Shapiro, J., dissenting) where in referring to parking lot

liability, the dissenter refers to "the outworn limitation of the law of bailment."

Especially where the parking rate charged is equivalent to the non-self-service arrangement, with the latter usually held to create a bailment, it seems to me that in a "park and lock" arrangement the operator should be required to exercise reasonable care to avoid tampering with, or theft of, the customers' cars. While there has been a tendency to consider a bare showing of a "park and lock" arrangement as creating a lease agreement[4] I doubt the sophistication of this doctrine. Unlike the usual tenant of realty, the car owner has utterly no control of the so-called leased space as he is by definition always absent and helpless to protect his property, for all practical purposes. Moreover, there is in most instances no fixed term, the duration of the parking being usually at the option of the car owner.

The lot operator assuredly is entitled to operate his lot in the most economical way. But this is not to say that in so doing he may reasonably expect to shed a duty of care to the car owner, who is in no position to protect his car while on the lot from tampering or malicious mischief.[5] I do not think the law of landlord-tenant is an apt doctrine to apply in such cases; and I think the time has come to reject that outmoded theory with its unrealistic confines in this type of application. Nor do I think mechanical labels should be applied to the relationship in "park and lock" arrangements.

The majority points to our decision in Sarbov Parking Corp. v. Motors Insurance Corp., D.C.App., 255 A.2d 112 (1969) for the proposition that absent actual notice, the lot operator is not liable for car damage due to malicious mischief. We held in

---

3. "In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." Helvering v. Gowron, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937).

4. *E. g.*, Quinn v. Milner, *supra.*

5. I exclude from this discussion damage resulting from the sole negligence of other car owners on the lot (or in a garage).

*Sarbov* that since the lot operator had actual notice of the mischief but took no steps to prevent it the "park and lock" lot operator was liable. Our decision there was confined to the particular facts of that case,[6] though we did in fact state that "park and lock" is generally "thought to create either a lease or license relationship." Sarbov Parking Corp., *supra* at 113. On the facts of this case, however, I do not consider that *Sarbov* requires a reversal.

While each case must stand on its own facts, I think that, generally speaking, an operator may be required to exercise reasonable care to avoid malicious mischief to, or theft of, vehicles parked on a commercial parking lot [7] (a going concern), even though the arrangement is "park and lock." And since the car owner is always absent, I believe that having established that damage from malicious mischief took place while the car was on the parking lot the operator should be required to establish that reasonable care had been taken to protect the vehicle from such damage or suffer liability for it.

This view is founded upon the principle that "[w]here a contract is implied from the surrounding circumstances, the law will derive its terms from the circumstances shown." Sparrow v. Airport Parking Company of America, *supra,* 289 A.2d at 92. "There are, . . . situations in which the actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal, misconduct of others. In general, these situations arise where the actor is under a special responsibility toward the one who suffers the harm, which includes the duty to protect him against such intentional misconduct; . . . Normally such a duty arises out of a contract between the parties, in which such protection is an express or implied term of the agreement." Restatement (Second) of Torts § 302B, comment (1965).

I do not feel that a car owner may fairly be regarded as a virtual stranger to the lot operator except for the payment of the parking fee. With the qualifications I have noted, I think a commercial lot operator of a "park and lock" owes the car owner the duty of reasonable care to protect the car from malicious mischief while parked. The car owner is entitled to expect such care. Where car damage is established from this cause, the burden is then on the lot operator to show this care or suffer liability for the damage.

On Petition for Rehearing en Banc

PER CURIAM.

On consideration of appellee's petition for rehearing *en banc* and of appellant's answer thereto, it is

Ordered that appellee's aforesaid petition is granted, and it is

Further Ordered that the opinions and judgment heretofore filed on October 29, 1974, be vacated and the Clerk is directed to schedule this cause for oral argument before the court sitting *en banc* during the month of January, 1975.

6. *See* Sarbov Parking Corp., *supra,* n. 5.

7. Cars parked massively at airports, for example, and at a comparatively reduced rate, may present a different situation, based upon what a car owner may reasonably expect under the individual circumstances. A different view likewise may, upon consideration, be applied where at a relatively reduced rate there is paid parking to witness a specific event, *i. e.,* where the parking arrangement is on an ad hoc basis only. The legal relationship depends upon the place, the conditions, and the nature of the transaction.