Howard BERNSTEIN, et al., Appellants,

v.

Richard NOBLE, Appellee.

No. 84–696.

District of Columbia Court of Appeals.

Argued Dec. 5, 1984.

Decided Jan. 25, 1985.

for her crimes in sodomizing appellee and her customer.

Daniel B. Haslam, III, Washington, D.C., for appellants.

Steven Weinberg, Washington, D.C., for appellee.

Before TERRY and ROGERS, Associate Judges, and PAIR, Associate Judge, Retired.

ROGERS, Associate Judge:

Appellants-landlords appeal the judgment for appellee-tenant Noble of $269.95 for the cost of a stereo tuner which was delivered to the landlords' apartment building, but never delivered to Noble.[1] The landlords challenge the trial court's rulings that the landlords owed Noble a duty of care, that the landlords or their agents were negligent in handling Noble's property, and that the exculpatory clause contained in the lease did not insulate the landlords from liability and therefore the duty of care owed was that of ordinary care.

The trial court, sitting without a jury, found the following facts. In February 1984, Noble ordered a stereo tuner from a store in Biddeford, Maine, and directed that it be shipped to his apartment in appellants' building. His tuner was delivered on February 20, 1984, by United Parcel Service to the apartment building. Paulette McLean, the receptionist/switchboard operator, signed the appropriate receipt for and received the tuner, and placed it on a shelf in a small room next to her desk where packages for tenants were kept. Mrs. McLean routinely accepted packages on behalf of tenants. Access to the room was limited; Mrs. McLean and the night receptionist/switchboard operator had keys to the door, which was kept locked, and there were bars on the windows.

When Mrs. McLean's shift ended at 4 p.m. and she was replaced by the night receptionist/switchboard operator, the package was on the shelf in the small room. Noble later informed Mrs. McLean that he had never received his tuner. Mrs. McLean had assumed that he had received it since the tuner was not on the shelf when she returned to work the next morning. Thereafter, Mrs. McLean gave Noble the empty box in which the tuner had been packaged; the box had been found outside of the apartment building and turned in to her.

Also in evidence was the parties' lease agreement. Paragraph 9 of the lease provided:

Should Landlord set apart in the building or otherwise in conjunction therewith, laundry or storage room for the convenience of the Tenants, Tenant may at his own risk and without cost, use for the purpose of laundry or storage a reasonable space therein if available. That Landlord's employees are prohibited as such from storing, moving, or handling articles about in such rooms and if any such employee, at the request of the Tenant, does take part in so doing he or she shall be an agent of the Tenant for such purpose and Tenant assumes all risk of loss or damage to such articles and things while in transit to or from such rooms and employees of Landlord are further prohibited as such of [sic] receiving any package or article delivered to the building for the Tenant or any person residing with Tenant, and if such employee shall receive any such article he or she in so doing shall be an agent of the Tenant.

The trial court held that the landlords owed a duty to Noble and that this duty was breached when the landlords' employee failed to safeguard and produce Noble's tuner. The court found that Mrs. McLean was an agent of Noble when she received

---

1. By order of May 31, 1984, this court granted allowance of this appeal from the judgment of the Small Claims Branch of the Superior Court.

the package, but the night receptionist/switchboard operator, who replaced Mrs. McLean when her shift ended at 4 p.m., had not received Noble's package and was, therefore, not Noble's agent under paragraph 9 of the lease, but an agent and employee of the landlords, and as such, her duties included safeguarding the room that the landlords undertook to provide for the holding of tenants' packages.

■ In reviewing the findings by a trial court which sat without a jury, we may reverse only if the findings are clearly erroneous and without evidentiary support, or if there was an error of law. *Nelson-Bey v. Robinson,* 408 A.2d 999, 1001–02 (D.C.1979) (citing D.C.Code § 17–305(a) (1981); *Blanken & Blanken Investment, Inc. v. Keg, Inc.,* 383 A.2d 1076, 1078 n. 4 (D.C.1978); *Julian W. Curtis Co. v. District-Realty Title Insurance Co.,* 267 A.2d 830, 833 (D.C.1970). The trial court's findings are supported by evidence in the record, and we find no error of law. Paragraph 9 of the lease did not preclude a finding of liability of the landlords for failure to account for Noble's tuner, and the landlords owed a duty to Noble which was breached when the landlords' employee failed to safeguard and produce the tuner.

■ "The creation of a bailment requires that possession and control over an object pass from the bailor to the bailee." *1420 Park Road Parking, Inc. v. Consolidated Mutual Insurance Co.,* 168 A.2d 900, 901 (D.C.1961). In this jurisdiction, a plaintiff may establish a prima facie case by showing the bailment and loss of his property. *Banachowski v. Saunders,* 187 A.2d 891, 892 (D.C.1963); *Smith's Transfer & Storage Co. v. Murphy,* 115 A.2d 300, 303 (D.C.1955). Establishment of a prima facie case raises a presumption or inference of negligence on the part of the bailee; this presumption controls the result by rule of law where there is no evidence presented in rebuttal. *Smith's Transfer & Storage Co., supra,* 115 A.2d at 303. When a defendant comes forward with evidence to rebut the presumption, the evidence destroys the inference as a controlling rule of law but does not destroy its probative weight as an inference of fact. *Id., cited in Banachowski v. Saunders, supra,* 187 A.2d at 892, and *Star Pontiac Co. v. Eastern Insurance Co.,* 184 A.2d 200, 202 (D.C. 1962). In any bailment case, a bailee may establish that a loss of property was not due to a lack of proper care on his part, or he may offer affirmative proof that as bailee he exercised the degree of care which the particular bailment called for, although he may be unable to explain or justify the loss. But whatever defense he offers presents no more than a question of fact. *Hecht Co. v. Leite,* 99 A.2d 87, 88 (D.C.1953).

■ A landlord may properly occupy the dual position of landlord and bailee. *Barclay, Inc. v. Maxfield,* 48 A.2d 768, 769 (D.C.1946), and the nature of the bailment will determine the proper standard of care which the bailee must exercise. If the bailment is gratuitous, the liability would be limited to acts of gross negligence, willful acts, or fraud, *id.* (citing *First National Bank v. Graham,* 10 Otto 699, 100 U.S. 699, 25 L.Ed. 750 (1879)), and in this jurisdiction, when a bailment is for hire, an exculpatory clause contained within a contract will also serve to limit liability to only those acts of gross negligence, willful acts, or fraud. *Shea v. Fridley,* 123 A.2d 358, 363 (D.C.1956); *Barclay, Inc. v. Maxfield, supra,* 48 A.2d at 769. Such clauses are, however, construed against the landlord. 2 M. FRIEDMAN, FRIEDMAN ON LEASES, § 17.1 at 914–15 (2d ed. 1983); *see also Lalekos v. Manset,* 47 A.2d 617, 619 (D.C.1946) (language of lease construed against draftsman).

■ In the instant case the landlords provided the locked room for packages received for tenants. Thus the relationship between the landlords and Noble with respect to the package in the room was that of bailor and bailee. *Barclay, Inc. v. Maxfield, supra,* 48 A.2d at 769. A bailment for hire was created when Mrs. McLean

placed the package for Noble on the shelf. *Id.* The landlords were therefore required to exercise ordinary care, and proof by Noble of delivery and failure to produce the tuner established a prima facie case.

Paragraph 9 is inapplicable to the circumstances at issue and therefore does not exculpate the landlords and thereby limit their liability to gross negligence. Viewing all of Paragraph 9, it seems clear that the storage room referred to in Paragraph 9 is of the kind described in *Barclay, Inc. v. Maxfield, supra,* and *Shea v. Fridley, supra,* and does not apply to a small room provided for the temporary holding of packages, as here. *National Tire Dealers & Retread Ass'n v. G.D.C. Corp.,* 147 A.2d 869, 872 (D.C.1959) (overnight keeping is not the same as storage). By its terms, Paragraph 9 did not address the circumstance of liability for the stored package received by Mrs. McLean, but only placed the risk on the tenant during transit of the package. However, even were Paragraph 9 applicable to temporary holding, the finding by the trial judge that Mrs. McLean routinely received packages for tenants supports the conclusion that the landlords had waived Paragraph 9 insofar as the type of activity at issue is concerned.

Finally, the trial judge did not err in finding that the night receptionist was negligent and that the negligence could be imputed to the landlords. *E.I. Du Pont De Nemours & Co. v. I.D. Griffith, Inc.,* 50 Del. 348, 130 A.2d 783, 786 (1957) (negligence of employee imputed to employer). The evidence presented a question of fact with respect to whether the landlords' evidence of due care rebutted the inference of negligence arising from the prima facie case. The circumstantial evidence of negligence is supported in the record. *Smith's Transfer & Storage Co., supra,* 115 A.2d at 303 (circumstantial evidence of negligence where uncontradicted testimony established that missing items were previously delivered).

*Affirmed.*