MALIK CORPORATION, Appellant,

v.

TENACITY GROUP, LLC,
et al., Appellees.

No. 07–CV–582.

District of Columbia Court of Appeals.

Argued Nov. 4, 2008.
Decided Dec. 11, 2008.

Bernard A. Gray, Sr., Washington, DC, for appellant.

Paul A. Kaplan with whom Joseph P. Bowser, Washington, DC, was on the brief, for appellees.

Before KRAMER and BLACKBURNE–RIGSBY, Associate Judges, and NEBEKER, Senior Judge.

PER CURIAM:

Malik Corporation appeals an order granting specific performance of the sale of its apartment building to appellees Brumal Tenant's Association and Tenacity Group, LLC, under the Tenant Opportunity to Purchase Act ("TOPA"). In a nonjury trial, the trial court determined that the appellees substantially performed under the contract and were entitled to purchase the property and receive attorneys'

fees and costs. We find no error and affirm.

## I.

Malik Corporation ("Malik") owned an apartment building located at 2639 15th Street, N.W., Washington, D.C. ("the Property"). In February of 2004, Malik entered into a contract with a third party for sale of the Property. From this agreement arose Malik's duty to notify his tenants of their "opportunity to purchase" rights under TOPA, D.C.Code §§ 42–3404.01 *et. seq.* Malik subsequently notified the tenants that the Property's selling price was $2,155,000 and that if they formed a tenant organization, they would have a right of first refusal to match the third party contract. Upon receiving notice, the tenants formed the Brumal Tenant's Association ("the Association"), notified Malik and assigned their rights to Tenacity Group, LLC ("Tenacity"). Tenacity then informed Malik it would be exercising the Association's right to match the third party contract.

In reply, Malik sent a Short Form Commercial Real Estate Agreement ("the Contract") to Tenacity. The Contract specified an asking price of $2,155,000, and acknowledged that Malik would receive a five percent deposit check from Tenacity for $107,500. The Contract also stipulated that Tenacity had the right to name and employ a title insurance, settlement, or escrow company and that the seller's agent would receive the deposit. Tenacity named Tenacity Settlements as the settlement agent, executed the Contract and returned it to Malik's agent along with a deposit check made payable to Tenacity Settlements. When Mr. Malik received the Contract and the deposit check, he informed Tenacity that he no longer desired to sell the Property. In November of 2004, Tenacity filed a Complaint seeking specific performance and a non-jury trial commenced in October of 2006.

At trial, Tenacity offered the Contract and a copy of the deposit check into evidence. The trial court also received evidence regarding the original contract between Mr. Malik and the third party, Bogden Builders. The original Contract did not specify a selling price for the Property, but the trial court received evidence that Bogden delivered a copy of a deposit check to Mr. Malik for $92,000, payable to the buyer's agent, National Title. Mr. Malik testified that the deposit check was a five percent deposit from Bogden for the Property. Mr. Malik also testified that he listed the Property with a realtor for $1,850,000. The trial court found that Tenacity complied with the terms of the Contract when it sent a copy of its deposit check to Mr. Malik's agent. It also found that the actual purchase price of the Property was $1,840,000, by considering the amount of Bogden's deposit check and Malilk's testimony. Malik was directed to sell the Property to Tenacity for $1,840,000, and pay their attorneys' fees. Malik subsequently filed a Notice of Appeal and a Motion For Stay Pending Appeal. After the trial court denied his motion, Malik filed an Emergency Motion to Stay the Judgment Pending Appeal and Waiver of Bond, which this court denied. The court-ordered sale of the Property took place in August of 2007.

Malik appeals, claiming that the trial court erred when it (1) failed to interpret the Contract to require the deposit be paid to Malik's agent, (2) declined to find Tenacity in breach of the Contract for not making the deposit check payable to Malik's agent, (3) determined the actual price of the Property, (4) concluded that Tenacity had a statutory right under TOPA to purchase the Property, and (5) awarded

Tenacity attorneys' fees. We perceive no error.

## II.

■■■■ We review non-jury trials under D.C.Code § 17–305(a) (2001) and will not set aside the trial court's findings of fact unless they are clearly erroneous or without evidence to support them. The evidence presented to the trial court will be viewed in the light most favorable to the prevailing party. *See Hinton v. Sealander Brokerage Co.*, 917 A.2d 95 (D.C.2007). We review a trial court's conclusions of law *de novo* and will only set aside its judgment for errors of law. D.C.Code § 17–305(a) (2001), and *Bernstein v. Noble*, 487 A.2d 231 (D.C.1985). Accordingly, whether a contract is ambiguous is a question of law, which we review *de novo, see Air Line Pilots Ass'n v. Twin City Fire Ins. Co.*, 803 A.2d 1001 (D.C.2002); *Trilon Plaza, Inc. v. Comptroller of State of New York*, 788 A.2d 146 (D.C.2001), as is whether a contract is enforceable, *see Affordable Elegance Travel, Inc. v. Worldspan, L.P.*, 774 A.2d 320 (D.C.2001). We review the trial court's award of attorneys' fees for abuse of discretion, with the caveat that the trial court's decision will only be set aside after a "very strong showing" of abuse of discretion. *Accord Maybin v. Stewart*, 885 A.2d 284, 288 (D.C.2005); *Wallasey Tenants Ass'n, Inc. v. Varner*, 892 A.2d 1135 (D.C. 2006); *cf. Pride Transport, Inc. v. Northeastern Pennsylvania Shippers Co-op. Ass'n Inc.*, 832 A.2d 163 (D.C.2003) (a decision to award costs is committed to the trial court's discretion, and upon review, it is not for the appellate court to substitute its discretion for that of the trial court).

The trial court concluded that the deposit was only required to be received by Malik's agent, not made payable to him. Paragraph nine of the Contract states, "It is understood that the purchaser has the right to name and employ a particular title insurance company, settlement, or escrow company, or title attorney, which may have been designated by purchaser as set forth in paragraph 4 above." In paragraph four, Tenacity inserted "Tenacity Settlements" in the space provided. Paragraph ten states, "Disposition of Deposit. The entire deposit, receipt of which is hereby acknowledged, shall be held by Seller's agent as a part of the purchase price to be paid in cash." Malik urges us to consider paragraph one, which states, in part, "Seller's Agent ... has received from Purchaser a deposit in the amount of ($107,500.00) by check (cash) to be applied as part of the Purchase Price of" the Property, along with paragraph ten's language directing that the deposit "shall be held by the Seller's agent" to mean that the deposit check is to be made payable to the Seller's agent. We disagree with Malik's interpretation of the plain language of the Contract.

■■■■ "The first step in contract interpretation is determining what a reasonable person in the position of the parties would have thought the disputed language meant." *1010 Potomac Assocs. v. Grocery Mfrs.*, 485 A.2d 199, 205 (D.C.1984). Malik contends that the words "shall be held by Seller's agent" amount to "shall be paid to Seller's agent" with respect to Tenacity's deposit. In discerning what a reasonable person in the position of the parties meant, we interpret the Contract as a whole, giving a "reasonable, lawful and effective meaning to all its terms." RESTATEMENT (SECOND) OF CONTRACTS §§ 202(2), 203(a) (1981). We cannot agree that a reasonable interpretation of paragraph ten means that the deposit shall be paid to the Seller's agent when read as a whole with paragraphs nine and four. Tenacity cannot be expected to name and employ an escrow company, for the pur-

pose of holding the deposit in anticipation of closing, while simultaneously delivering those same deposit funds to the Seller's agent. This interpretation defeats the function of the escrow agent and renders paragraphs four and nine of the Contract unreasonable. For the purposes of this transaction, the escrow agent is functioning in a limited capacity as the Seller's agent in holding the deposit. "In the typical escrow arrangement to facilitate transfer of title to real property, the seller and buyer employ a third party to accept their respective tenders of performance under the contract." *Stuart v. Clarke,* 619 A.2d 1199, 1200 (D.C.1993)(internal quotation and citation omitted). *See* 30A C.J.S. *Escrows* §§ 15, 16, at 626–29 (2007).

■ The trial court correctly held that Tenacity substantially performed its duty in tendering the deposit check. However, we emphasize that the deposit was not necessary to create a binding agreement between the parties. Malik's offer to convey the Property was accepted by Tenacity. Malik and Tenacity exchanged promises, creating a bilateral contract. "[I]n a bilateral contract, where a promise is exchanged for a promise, each promise is the consideration for the other promise." 2 CORBIN, CONTRACTS § 5.25, at 126 (1995). We reject Malik's argument that a failure to tender a deposit created a breach of the Contract by Tenacity. Not only did Tenacity properly tender the deposit, but any failure to do so could not have voided the Contract or created a breach. The tender of the deposit was not a stated or implied condition precedent to the formation of the Contract. *See 3511 13th St. Tenants v. 3511 13th St. N.W. Residences,* 922 A.2d 439, 443 (D.C.2007). Finally, we note that whether a breach of contract is "material" is an issue of fact, and such questions "are the sort we properly rely on juries to decide." *Id.* at 445. The trial court found

no breach and we see no basis to disturb that finding.

■ The trial court held that the purchase price of the Property was $1,840,000, rather than $2,155,000. Malik appeals, claiming that because the Property's sale price was never in dispute, the trial court was prohibited from hearing testimony on that issue. Malik relies on our holding in *Adams v. A.B. & A., Inc.,* 613 A.2d 858 (D.C.1992). That reliance is misplaced. In *Adams,* a homeowner brought a breach of contract suit against a contractor for failing to complete installation of a heating and air-conditioning system. In affirming the trial court's directed verdict for the contractor, we held that "pretrial procedures are designed to remove cases from the realm of surprise." *Id.* at 860 (citing *Taylor v. Washington Hosp. Ctr.,* 407 A.2d 585 (D.C.1979), *cert. denied,* 446 U.S. 921, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980)). Trial courts may, not shall, reject attempts to pursue issues not among the pretrial order. *See* 6A C. WRIGHT, A. MILLER & M.K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1527, at 271 (1990).

Rather than engage in a review for abuse of discretion, we conclude that Malik was not, as a matter of law, surprised at trial by the issue of the sale price of the Property. Tenacity specifically stated in their Complaint that their claim arose from their rights under TOPA. TOPA states that "the owner shall give the tenant an opportunity to purchase the accommodation at a price and terms which represent a bona fide offer of sale." (Emphasis added.) D.C.Code § 42–3404.02. Given that this Complaint asked the trial court to grant specific performance of the Contract, a party would have to be on notice that the sale price of the Property could be an issue for litigation. TOPA's language that the tenant would be matching a "bona fide offer of sale"

grants further notice to the parties. Additionally, TOPA directs the owner to provide tenants a copy of the contract with the third party, D.C.Code § 42–3404.03, and considers that any owner is bargaining without good faith when he offers any third party a property for less than ninety percent of the sales price offered to the tenant. D.C.Code 42–3404.05(a–1).[1] Here, Malik failed to provide Tenacity with a finalized copy of the third party contract, but did disclose a copy of the $92,000 deposit check for five percent of the sale price. Since TOPA limits a tenant's deposit at five percent,[2] but cannot similarly limit deposit amounts for third party buyers, it is possible that the $92,000 deposit check from Bogden Builders was for 4.3 percent of a sale price of $2,155,000. However, this possibility was refuted by Mr. Malik when he testified that the $92,000 check was for a five percent deposit. The difference between the sale price to Bogden Builders and Tenacity was $315,000. It strains the imagination that Mr. Malik was not only unaware of this difference, but that he could be surprised by litigation on this issue. We find that, as a matter of law, the sale price was a valid issue for litigation.

■ Malik next contends that the trial court erred when it concluded that Tenacity had a statutory right under TOPA to purchase the Property. As already discussed, the Contract is supported by consideration and is enforceable. Malik specifically argues that Tenacity's right to acquire the Property existed only if it was for sale. Malik believes that after the Contract's execution, he was free to withdraw the offer and void the Contract. This is incorrect as a matter of law, but also shows a misunderstanding of the intent of TOPA. The Council of the District of Columbia enacted TOPA to discourage the displacement of tenants through the sale of rental properties and to provide tenants opportunities for home ownership, without interfering with a landlord's property rights. *See Linen v. Lanford,* 945 A.2d 1173, 1177–78 (D.C.2008). TOPA also allows a tenant, or tenant organization, to "seek enforcement of any right or provision under this chapter through a civil action in law or equity...." D.C.Code § 42–3405.03. *See Wilson Courts Tenants Ass'n, Inc. v. 523–525 Mellon St., LLC,* 924 A.2d 289, 292 (D.C.2007). We hold, as did the trial court, that TOPA authorized specific performance.

■ "Specific performance is an extraordinary equitable remedy, the denial or granting of which is within the 'sound and informed discretion' of the trial court." *Drazin v. American Oil Co.,* 395 A.2d 32, 34 (D.C.1978) (quoting *General American Life Ins. Co. v. Natchitoches Oil Mill, Inc.,* 160 F.2d 140, 143 (5th Cir.1947)). Unless it is clearly erroneous, we accept the trial court's finding that Malik was unwilling to perform on the Contract. *See Flack v. Laster,* 417 A.2d 393 (D.C.1980) (a purchaser seeking specific performance must show that he it ready, willing and able to perform). Because the only bar to the performance of the Contract was Malik's refusal to execute the sale and Tenacity showed themselves as ready, willing and able to purchase the property, we can find

---

**1.** TOPA defines "bargaining without good faith" as when "the owner sells or contracts to sell the accommodation to a third party for a price more than 10% less than the price offered to the tenant." D.C.Code § 42–3404.05(a–1). The trial court stated that Malik's respective prices to Bogden Builders and Tenacity, "raises serious concerns" about Malik's good faith.

**2.** "The owner shall not require the tenant to pay a deposit of more than 5% of the contract sales price...." D.C.Code § 42–3404.05(b).

no error in the trial court's decision to order specific performance.

 Finally we consider the trial court's award of attorneys' fees to Tenacity. "This court generally defers to the broad discretion of the trial judge in the calculation and award of attorneys' fees." *Psaromatis v. English Holdings I, LLC,* 944 A.2d 472, 490 (D.C.2008) (internal quotation and citation omitted). We require a "very strong showing of abuse of discretion to set aside the discretion of the trial court...." *Id.* at 490 (internal quotation and citation omitted). We have long held that the District of Columbia follows the "American Rule" with respect to attorneys fees. *See Launay v. Launay,* 497 A.2d 443 (D.C.1985). A court will not award the prevailing party attorneys' fees unless one of the three recognized exceptions are met. The first exception permits attorneys' fees for "a person who preserves or recovers a fund or property for the benefit of others," and the second is for when an opposing party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 449–50. (internal quotations and citation omitted). The third exception, which applies here, is when the legislature has made "specific and explicit provisions for the allowance of attorneys' fees under selected statutes." *Id.* at 450 (internal quotation and citation omitted). In its order awarding attorneys' fees, the trial court cited D.C.Code § 42–3405.03, "An aggrieved owner, tenant, or tenant organization may seek enforcement of any right or provision under this chapter through a civil action in law or equity, and upon prevailing, may seek an award of costs and reasonable attorney fees." Both buyers and sellers under TOPA actions have a right to the equitable remedy of specific performance and can recover attorneys' fees. Malik has made no showing of the trial court's abuse of discretion in its award of attorneys' fees and, as its decision falls squarely within a statutory exception to the "American Rule," we decline to set aside its decision.

Tenacity asks this court to remand this matter to the trial court to allow recovery of Tenacity's attorneys' fees incurred during the appeal process. Our rules require Tenacity to file with the Clerk an itemized and verified bill of costs and fees, accompanied by proof of service, within fourteen days from entry of judgment. D.C.App. R. 39(a)(c)(d). *See King v. King,* 286 A.2d 234 (D.C.1972); *Prisco v. Stroup,* 947 A.2d 455, 463 n. 10 (D.C.2008).

We find no error or abuse of discretion. The judgment of the trial court is affirmed.