[No. B075946. Second Dist., Div. Four. Feb. 23, 1994.]

ROBERT GORE RIFKIND, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
NED GOOD, Real Party in Interest.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of Discussion parts II and III.

**COUNSEL-**

Bird, Marella, Boxer, Wolpert & Matz, Joel E. Boxer and Thomas R. Freeman for Petitioner.

No appearance for Respondent.

Ned Good and Richard Huver for Real Party in Interest.

**OPINION**

**EPSTEIN, Acting P. J.**—The petitioner in this case, an attorney, was sued by another attorney for improperly withdrawing money held in a joint account pending resolution of a fee dispute between them. The petitioner, then represented by counsel, was deposed and, at the deposition, he was asked "legal contention" questions, calling upon him to state all facts, list all witnesses and identify all documents that support the affirmative defenses he had asserted in his answer to the lawsuit. In the published part of this opinion we discuss the propriety of these questions in the context of a deposition. We conclude that the questions were improper in that context, and that the trial court erred in granting respondent's motion to compel petitioner to answer them. In reaching this conclusion, we emphasize that our concern is not with the questions but their context. The same questions would have been entirely appropriate if asked by interrogatories.

In the unpublished portion of our opinion we conclude that the trial court improperly ordered petitioner to provide responses that would have invaded the attorney-client privilege. We shall direct that this part of the order also be set aside.

Finally, and in light of these conclusions, we shall direct the trial court to vacate its order imposing sanctions against petitioner and his attorney for refusing to answer the deposition questions that we review.

## Factual and Procedural Summary

Because of the limited nature of the issues before us, it is not necessary to set out a detailed account of the underlying litigation, or the litigation out of which it, in turn, arose. Instead, we provide the following synopsis, related to the contention questions issue, reserving a fuller exposition of facts especially pertinent to the lawyer-client privilege for our discussion of that issue.

The parties to this proceeding are Robert Gore Rifkind, the petitioner, and Ned Good, the real party in interest. Each is an experienced attorney.

Mr. Rifkind was a longtime friend of a woman whose husband was killed in an air crash. Through his law firm, Rifkind & Sterling, Inc., he undertook to represent the woman and her children in litigation against those believed to be responsible for the death. Mr. Rifkind associated Mr. Good's law firm, Good & Novack, as cocounsel, and that firm undertook substantial efforts in the litigation. After settlement of one of the cases a dispute arose between Mr. Rifkind and Mr. Good over entitlement to attorney fees resulting from the disposition. The attorneys were unable to resolve their differences over a division of the fees, but they did agree to deposit them in a joint blocked bank account. Some time later, the funds were withdrawn from the account. Mr. Good's suit alleges that Mr. Rifkind tortiously caused the withdrawal.

Mr. Good's lawsuit was initiated by an unverified complaint. Mr. Rifkind, acting for himself in propria persona, filed an answer denying the allegations and asserting several affirmative defenses. Mr. Rifkind is not a litigator, and his answer apparently was patterned after that of a codefendant and former partner. Mr. Rifkind's present attorneys were substituted into the case by a formal substitution of counsel filed shortly thereafter.

Mr. Rifkind's deposition was taken later in the month that the substitution was effected. His attorney was present to defend the deposition. During the course of the deposition, Mr. Rifkind was asked, and was instructed not to

answer, three categories of questions that later became the subject of Mr. Good's motion to compel. The trial court ultimately ordered Mr. Rifkind to answer questions and follow-up questions on two of these categories, and denied relief on the third.

The contention questions at issue here were in the first category. While the phrasing of these questions varied, they all involved the same three inquiries about Mr. Rifkind's affirmative defenses:

1. State all facts that support the affirmative defense.

2. State the identity of each witness who has knowledge of any facts supporting the affirmative defense.

3. Identify any documents that pertain to the facts or witnesses.

Mr. Rifkind's attorney objected to these questions as calling for legal conclusions. He explained that it is unfair to ask a witness at a deposition to determine on his own which facts support a particular affirmative defense, such as the statute of limitations. But counsel expressly invited Mr. Good's attorney to ask the same questions by way of interrogatories.

Mr. Good's attorney declined the invitation and, instead, moved the court to compel Mr. Rifkind to answer the questions.

Mr. Rifkind also refused to answer a question that he believed would lead to a breach of attorney-client confidences between himself and the woman he and Mr. Good had represented. The trial court granted Mr. Good's motion to compel with respect to this category of inquiry, and we shall discuss the issue presented by that ruling in the unpublished portion of this opinion. Since the trial court denied Mr. Good's motion to compel with respect to the third category of questions, we do not deal with it further.

Besides seeking an order to compel further answers, Mr. Good's attorney also sought $1,189 in monetary sanctions pursuant to Code of Civil Procedure sections 2023 and 2025, subdivision (o).[1] The court granted $1,150 in sanctions against Mr. Rifkind and his attorney.

We issued an order to show cause why the order compelling responses and imposing sanctions should not be vacated. Both the petitioner and real party in interest have responded with further briefing. We shall direct the court to vacate its order as to the contention questions at deposition, the questions as to which the lawyer-client privilege was interposed, and as to sanctions.

---

[1]All further code citations are to the Code of Civil Procedure except as otherwise indicated.

DISCUSSION

I

■ There are surprisingly few decisions on the propriety of deposition questions that ask a party deponent to state all facts, list all witnesses and identify all documents that support or pertain to a particular contention in that party's pleadings. (We refer to these as 'legal contention questions.') What authority there is almost uniformly condemns the practice. These authorities focus on the inappropriateness of such questions at depositions while approving them in the context of interrogatories.

We emphasize at the outset what we are not discussing: questions at a deposition asking the person deposed about the basis for, or information about, a factual conclusion or assertion, as distinguished from the basis for a legal conclusion. Thus, if a deponent says that a certain event happened at a particular time or place, it is quite proper to ask the person, at deposition, how he or she became aware of it, his or her knowledge about it, and for similar information of a factual nature.

The first California case to discuss the issue of legal contention questions at a deposition is *Pember* v. *Superior Court* (1966) 240 Cal.App.2d 888 [50 Cal.Rptr. 24] (*Pember I*). It remains the only authority cited to us, or which we have found, that approves legal contention questions at a deposition. *Pember I* arose out of a vehicle collision, personal injury case. The plaintiff served interrogatories on the driver of the offending car, asking him to state the facts supporting his contention of contributory negligence. The defendant answered in vague terms, and said that investigation was ongoing. The plaintiff's attorney asked him essentially the same questions at deposition, and was met by an objection and refusal to answer. The trial court denied plaintiff's motion to compel on the ground that the questions "call for a legal theory of the facts [and] should be accomplished by means of written interrogatories wherein . . . [defendant's] attorney, as a professional could apply the facts to his legal theory." (240 Cal.App.2d at p. 889; first bracketed word supplied.) The plaintiff sought appellate review by extraordinary writ, which was granted. The Court of Appeal noted that contention questions had been approved for interrogatories, and found no reason not to allow them at a deposition. It held that the trial court had abused its discretion in ruling otherwise, and directed the court to order the defendant to answer the questions, and to decide whether the plaintiff should have costs pursuant to former section 2034.

The second *Pember* case, *Pember* v. *Superior Court* (1967) 66 Cal.2d 601 [58 Cal.Rptr. 567, 427 P.2d 167] (*Pember II*) arose out of the trial court's

ruling on the sanctions issue. On remand from *Pember I*, the trial court concluded the defendant's refusal to answer the contention questions at his deposition had not been "without substantial justification," as the statute then required for imposition of sanctions, and it refused to order the defendant to pay such costs. (*Id.* at p. 603.) On writ review, the Supreme Court agreed that sanctions were not appropriate under the circumstances presented. Having said that, it made the following observations about the holding in *Pember I*:

"Although we are not here required to determine the soundness of that holding, we wish to call attention to the fact that none of the cases cited by the Court of Appeal in support of its holding involved inquiry on the ·*deposition* of a layman as to the factual basis on which he claimed his opponent to have been negligent or contributively negligent.

"In *Singer* v. *Superior Court*, 54 Cal.2d 318 . . . , cited by the Court of Appeal, it was held that answers to such questions should be required when propounded by *written interrogatories*; but such a situation is clearly different from that presented on the oral deposition of a layman." (*Pember II*, *supra*, 66 Cal.2d at p. 604; original italics.)

This condemnation of legal contention questions to a layperson at a deposition has stood without further appellate comment for over 25 years. It is congruent with the result reached in the federal cases that have addressed the issue.

In *Lance, Inc.* v. *Ginsburg* (E.D.Pa. 1962) 32 F.R.D. 51, the court confronted the identical situation. The court concluded that the propounding party was entitled to a response to its legal contention questions, but by answers to interrogatories rather than by deposition. "To be sure," the court said ". . . the client presumably knows the facts (although not always), but he can hardly be expected to know their legal consequences. This is what lawyers are for. Defendant, of course, when asked the factual basis for what is obviously his lawyer's allegation, could simply aver lack of knowledge. Such an answer not only would not advance plaintiff's pre-trial knowledge, but could conceivably subject defendant to an unwarranted trial hazard on cross-examination. We think the cause of justice and the fruitful advancement of discovery will be better served by refusing plaintiff's motion to compel answers on deposition inquiries on the factual basis of conclusionary allegations. While, as we have sought to make clear, plaintiff is undoubtedly entitled to such information, we think it could be more expeditiously and more intelligently obtained by written interrogatories." (32 F.R.D. at p. 53.)

Later cases have approved and applied the *Lance* decision and its reasoning. (See *Davis* v. *Lower Bucks Hospital* (E.D.Pa 1972) 56 F.R.D. 21, 22;

*Protective Nat. Ins.* v. *Commonwealth Ins.* (D.Neb. 1989) 137 F.R.D. 267, 281; see also *Liberty Mutual Ins. Co.* v. *Superior Court* (1992) 10 Cal.App.4th 1282, 1288 [13 Cal.Rptr.2d 363] [federal decisions are persuasive authority in construing the California discovery law, absent a contrary decision in this state].)

As these authorities make clear, the problem with legal contention questions has nothing to do with discoverability of the information sought. The information is clearly discoverable when sought by written interrogatory. *Singer* v. *Superior Court* (1960) 54 Cal.2d 318 [5 Cal.Rptr. 697, 353 P.2d 305] is the leading case, and it has been consistently followed in the context of interrogatories. (See *Burke* v. *Superior Court* (1969) 71 Cal.2d 276, 281 [78 Cal.Rptr. 481, 455 P.2d 409]; *West Pico Furniture Co.* v. *Superior Court* (1961) 56 Cal.2d 407, 417 [15 Cal.Rptr. 119, 364 P.2d 295]; *Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630, 639 [177 Cal.Rptr. 445]; *Citizens for Parental Rights* v. *San Mateo County Bd. of Education* (1975) 51 Cal.App.3d 1, 37 [177 Cal.Rptr. 445]; *Petersen* v. *City of Vallejo* (1968) 259 Cal.App.2d 757, 781 [124 Cal.Rptr. 68, 82 A.L.R.3d 544]; *Universal Underwriters Ins. Co.* v. *Superior Court* (1967) 250 Cal.App.2d 722, 732 [58 Cal.Rptr. 870].) The Civil Discovery Act of 1986 codified the *Singer* rule in section 2030, subdivision (c)(6): "An interrogatory may relate to whether another party is making a certain contention, or to the facts, witnesses, and writings on which a contention is based. An interrogatory is not objectionable because an answer to it involves an opinion or contention that relates to fact or the application of law to fact, or would be based on information obtained or legal theories developed in anticipation of litigation or in preparation for trial."[2]

Petitioner argues that this express approval of the interrogatory discovery method for legal contention questions implies legislative rejection of other methods to elicit contention information. He cites authorities that have applied that kind of inference in statutory construction, including one that is fairly close to the issue before us: *Irvington-Moore, Inc.* v. *Superior Court* (1993) 14 Cal.App.4th 733, 739 [18 Cal.Rptr.2d 49]. In that case, the court observed that insurance policies are subject to a request for production under section 2031 in light of the express recognition for discovery of policy provisions in section 2017, subdivision (b), and stated that if the Legislature had intended to limit discovery of insurance information to particular methods of discovery, it would have done so by an appropriate limiting provision.

---

[2]The fact that this provision was included in the 1986 act to codify, rather than to change existing law is reflected in the reporter's note to proposed section 2030, subdivision (c)(5), from which the present language was taken. (See 3 Hogan, Modern Cal. Discovery (4th ed. 1988) p. 288.) The enacted subdivision is (c)(6).

This is a substantial argument, but it falters on lack of support in the legislative history of the 1986 act. As we have noted, the express recognition of contention interrogatories was made to codify existing case law—the *Singer* case and its progeny—not to change the law. One may search the legislative materials in vain for evidence of an intent to enact the statement in *Pember II* into the statute. The most that may be said about the bearing of the 1986 act to the issue before us is that the Legislature chose to leave it to common law development, where it had been, and to bring the California law closer to the federal law. As we have discussed, the federal cases preclude legal contention questions at a deposition.

As one commentator put it, legal contention questions require the party interrogated to make a "law-to-fact application that is beyond the competence of most lay persons." (1 Hogan, Modern California Discovery, *supra*, § 5.9, p. 252.) Even if such questions may be characterized as not calling for a legal opinion (see *Singer* v. *Superior Court, supra*, 54 Cal.2d at p. 326), or as presenting a mixed question of law and fact (see 4A Moore's Federal Practice (2d ed.) § 33.17[2], p. 33-85), their basic vice when used at a deposition is that they are unfair. They call upon the deponent to sort out the factual material in the case according to specific legal contentions, and to do this by memory and on the spot. There is no legitimate reason to put the deponent to that exercise. If the deposing party wants to know facts, it can ask for facts; if it wants to know what the adverse party is contending, or how it rationalizes the facts as supporting a contention, it may ask that question in an interrogatory. The party answering the interrogatory may then, with aid of counsel, apply the legal reasoning involved in marshaling the facts relied upon for each of its contentions. That, we believe, is a principal basis of the Supreme Court's dicta in *Pember II*, and of the federal authorities. It is a major reason why, as Professor Hogan puts it, "[t]aking the oral deposition of the adverse party is neither a satisfactory nor a proper way to satisfy" the interrogating party's desire to learn which facts a party thinks support its specific contentions. (1 Hogan, *supra*, § 5.9, p. 252.) "[T]he most suitable tool" for obtaining this kind of information is the written interrogatory, because "[t]his discovery device provides time for reflection as well as the assistance of counsel in formulating a reply. The interrogatory method of discovery takes on an added dimension when employed for this purpose. It is not confined, as is an oral deposition, to learning what a party has done, seen, heard, or been told. So used, the interrogatory becomes an instrument for forcing one's opponent (or, more realistically, the opponent's attorney) to engage in a rather sophisticated process of legal reasoning. This process will require the responding party to sort through the mass of available factual data and arrange it in terms of the particular contentions that are being made." (1 Hogan, *supra*, § 5.9, p. 253.)

As the United States District Court put it in the *Lance* case, "[t]his is what lawyers are for." (32 F.R.D. at p. 53.)

Besides his reliance on the *Pember I* decision that was criticized by the Supreme Court in *Pember II*, real party offers two reasons why legal contention questions should be allowed at the deposition in this case: petitioner filed an answer in propria persona, and petitioner is a lawyer. Neither is persuasive.

The fact that Mr. Rifkind filed an unverified answer to Mr. Good's lawsuit is no justification for requiring him to answer legal contention questions at his deposition. He retained an attorney shortly after filing the answer and he was represented by counsel at the deposition. There is no reason to treat him differently from a party who had counsel when the original unverified responsive pleading was filed.

The same response applies to the argument that legal contention questions at the deposition ought to be allowed because Mr. Rifkind is an attorney. It is true that the court in *Pember II*, and other authorities, pointed out the unfairness of asking such questions of a lay deponent. But a lawyer who is sued or who is suing someone else, and who places his or her cause in the hands of an attorney, is no less entitled to have that attorney attend to the legal and quasi-legal aspects of the case than is a layperson. The task of having to "sort through the mass of available factual data and arrange it in terms of the particular contentions" is that of the lawyer, not the client. (1 Hogan, *supra*, § 5.9, p. 253.) "This is what lawyers are for." (*Lance, Inc.* v. *Ginsburg, supra*, 32 F.R.D. at p. 53.)

We conclude that contention questions of the kind at issue in this case, while entirely appropriate for interrogatories, are not proper in the deposition of a party who is represented by counsel.[3] The order requiring Mr. Rifkind to answer them at deposition must be set aside.

## II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Let an order issue, mandating the respondent court to vacate and set aside its order of June 8, 1993, directing petitioner to answer further questions at

---

[3]We do not decide whether such questions would be appropriate at the deposition of an unrepresented party, or the extent, if any, that some contention questions may be proper to test statements in a verified pleading. Those issues are not before us. We observe, however, that even if such questions are legally permissible, the party to be deposed could still seek a protective order under sections 2017, subdivision (c) and 2025, subdivision (i)(7).

*See footnote, *ante*, page 1255.

deposition and imposing sanctions, and to enter a new and different order denying the motion of real party in interest in its entirety, without sanctions. Petitioner is to have his costs on this mandate proceeding.

Vogel (C . S.), J., and Hastings, J., concurred.

Petitioner's application for review by the Supreme Court was denied May 12, 1994. Baxter, J., did not participate therein.