*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CV-1017

ALFRED L. STONE, APPELLANT,

v.

LANDIS CONSTRUCTION COMPANY, INC., *et al*., APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-1459-14)

(Hon. Robert Okun, Trial Judge)

(Argued June 23, 2015　　　　　　　　　　Decided July 23, 2015)

Alfred L. Stone, *pro se*.

*Lily A. Graves*, with whom *Albert Wilson*, *Jr.*, was on the brief, for appellee Daniel Cavell.

*Joel P. Bennett* filed a brief for appellees Landis Construction, Ethan Landis, and Nannette Frost.

Before BLACKBURNE-RIGSBY and EASTERLY, *Associate Judges*, and STEADMAN, *Senior Judge*.

STEADMAN, *Senior Judge*: Responding to an advertisement seeking to hire a master plumber, appellant Alfred L. Stone interviewed for a position with Landis

Construction Company, Inc. ("Landis"), and was turned down. During the course of subsequent litigation, in which Stone unsuccessfully pursued race and age discrimination claims,[1] Stone learned that Landis had subsequently hired an unlicensed white plumber and had allegedly provided plumbing services for a number of years without proper licensing. He then filed suit against Landis, (as well as its CEO and two employees), alleging violations of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901 to -3913 (2012 & 2015 Supp.).[2] Proceeding pro se both below and on appeal, he now appeals the trial court's dismissal of his case for lack of standing under the CPPA.[3] Although we find that Stone has standing, we conclude that he has failed to state a claim upon which relief can be granted, and thus affirm.

---

[1] *See Stone v. Landis Const. Corp.*, 733 F. Supp. 2d 148 (D.D.C. 2010) (discussing failed EEOC claims) *rev'd and remanded*, 442 Fed. Appx. 568 (D.C. Cir. 2011) (allowing race discrimination dismissals to stand, and reversing for a federal jury trial on age discrimination claims); *Stone v. Landis Const. Corp.*, 598 Fed. Appx. 785 (D.C. Cir. 2015) (affirming a jury verdict finding that age discrimination had not been established).

[2] Stone also included four common-law counts in his complaint, but does not challenge on appeal the trial court's dismissal of those counts insofar as they were distinct from the CPPA claim.

[3] Appellees challenge the timeliness of Stone's appeal on the ground that Stone's motion under Super. Ct. Civ. R. 59 (e) was not timely filed and thus did not extend the time to appeal under D.C. App. R. 4 (a)(4)(A). Stone did in fact

(continued…)

"Standing is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Grayson v. AT&T Corp.*, 15 A.3d 219, 229 (D.C. 2011). "[A] lawsuit under the CPPA does not relieve a plaintiff of the requirement to show a concrete injury-in-fact to himself." *Id.* at 244. As we understand Stone's argument, he asserts injury resulting from his job rejection and Landis's use of unlicensed plumbers, both of which adversely affected his employment situation.[4] When a plaintiff alleges injury to statutorily-conferred rights, we do not look ahead to the merits of whether the alleged statutory right actually exists, but only inquire whether the plaintiff has alleged an injury potentially covered by the statute at issue. *Id.* at 231. Because Stone has alleged that his loss of potential employment constitutes an injury-in-fact under the

---

(…continued)
present the motion to the clerk of the Superior Court for filing within the requisite ten-day period but it was "rejected" for failure to attach a proposed order. This rejection did not affect the validity of the filing for purposes of extending the time for appeal. *See Montgomery v. Doctor, Doctor & Salus, P.C.*, 578 A.2d 176 (D.C. 1990) (notice of appeal timely filed although rejected by Superior Court clerk for failure to pay filing fee and to include eight copies of the notice of appeal).

[4] Stone also purports to represent the interests of Landis's plumbing customers, but he makes no allegation that he sought any plumbing services from Landis, and he thus has no standing on this ground to sue in a personal or representative capacity. *Grayson*, 15 A.3d at 247.

CPPA, we conclude, pursuant to *Grayson*, that Stone has standing to assert his claim.[5]

However, "dismissal under Rule 12(b)(6) is appropriate where the complaint fails to allege the elements of a legally viable claim." *Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1023 (D.C. 2007). Although Stone has standing to assert his interpretation of the CPPA, the existence of the statutory rights he seeks to vindicate is a distinct question. *Grayson, supra*, 15 A.3d at 1252. We thus consider whether the legislature intended by its statutory language to include the employment relationship within the protection of the CPPA.[6]

---

[5] In *Grayson*, we discussed the fact that some courts have allowed for "overlap between the standing and merits inquiries," and have seemed to apply the principle that "if the plaintiff's claim has no foundation in law, he has no legally protected interest and thus no standing to sue." *Grayson*, 15 A.3d at 230-31 (citations omitted). However, we concluded that firmly distinguishing between the standing and merits inquiries was "the better view," and thus held that Grayson's allegation of injury under the CPPA conferred standing upon him, despite his failure to show a violation of the CPPA on the merits. *Id*. at 231, 249-51.

[6] In the absence of "procedural unfairness, we may affirm a judgment on any valid ground, even if that ground was not relied upon by the trial judge." *Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 711 n.10 (D.C. 2013) (quotation marks and citation omitted). The requirement of procedural fairness is satisfied here, since the parties have fully briefed and argued this substantive question.

"[T]he CPPA was designed to police trade practices arising only out of consumer-merchant relationships, and does not apply to commercial dealings outside the consumer sphere." *Ford v. ChartOne, Inc.*, 908 A.2d 72, 81 (D.C. 2006) (internal quotation marks and citations omitted). When used as a noun, "consumer" means "a person who, other than for purposes of resale, does or would purchase, lease (as lessee), or receive consumer goods or services . . . or does or would otherwise provide the economic demand for a trade practice." D.C. Code § 28-3901 (a)(2)(A) (2015 Supp.).[7] A "trade practice," in turn, is "any act . . . [involving] . . . a sale, lease or transfer, of consumer goods or services." D.C. Code § 28-3901 (a)(6) (2015 Supp.). When used as an adjective, "consumer" describes anything that (as relevant here) "[a] person does or would purchase, lease (as lessee), or receive and normally use for personal, household, or family purposes." D.C. Code § 28-3901 (a)(2)(B)(i) (2015 Supp.). Finally, "'goods and services' means any and all parts of the economic output of society, . . . and includes consumer credit, franchises, business opportunities, real estate

---

[7] In 2013, legislation became effective which made a number of amendments to the CPPA, including to the version of D.C. Code § 28-3905 (k) on standing that we interpreted in our 2011 *Grayson* decision. None of these amendments, however, affect the analysis in this opinion. Therefore, all citations in this opinion to the CPPA are to the amended version.

transactions, and consumer services of all types." D.C. Code § 28-3901 (a)(7) (2015 Supp.).

Thus, Stone's "consumer" status at bottom turns on whether he provided "economic demand" for "consumer goods and services." To so hold would involve the contortion of normal language. Stone wanted to *provide* plumbing services through his employment – not receive them. Nobody uses the term 'consumer employment.' Employment, properly understood, is not used "for personal, household, or family purposes." Employment *creates* the economic outputs that consumers demand, rewarding employees with payment for their labor. Employees *then* enter the marketplace as consumers, and spend the money they earned on goods and services that they put to "personal, household or family" use. *See Manning v. Zuckerman*, 444 N.E.2d 1262, 1265 (Mass. 1983) ("An employee and an employer are not engaged in trade or commerce with each other."); *Donovan v. Digital Equip. Corp.*, 883 F. Supp. 775, 787 (D.N.H. 1994) ("plaintiff's lengthy relationship with the defendant did not involve the genre of marketplace or consumer transactions actionable even under an expansive reading of the [New Hampshire Consumer Protection] Act. Rather, this was, in form and essence, an employment relationship.").

Nor indeed does employment naturally fall even within the definition of "goods and services." Employment *produces* goods and services. It is not "the economic output of society," but rather one of the relationships within that society, whereby economic output is produced. *See Buie v. Daniel Int'l Corp.*, 289 S.E.2d 118, 119-20 (N.C. Ct. App. 1982) ("Unlike buyer-seller relationships, we find that employer-employee relationships do not fall within the intended scope of [North Carolina's Unfair Trade Practices Act], in spite of plaintiff's strained characterization of the latter as 'sale of employment skills.'") Stone points to the fact that the definition of "goods and services" includes "business opportunities." D.C. Code § 28-3901 (a)(7) (2015 Supp.). That phrase, however, illustrated by its coupling with "franchises," is generally used as a term of art referring to the sale of goods and services that enable the purchaser to start a business, along with an expectation that the seller will have some type of ongoing business relationship with the purchaser. *See* 16 C.F.R. § 437.1 (c) (2015); Md. Code Ann., Bus. Reg. § 14-101 (West 1996); V.A. Code Ann. § 59.1-263 (A) (West 1985). Employment is simply not a "business opportunity" in this sense.[8]

---

[8] At oral argument, Stone for the first time raised the argument that in order for him to legally fulfill the obligations of a master plumber, D.C. plumbing regulations would require Landis Construction to offer him a 20% interest in the company. However, we normally do not consider arguments raised for the first

(continued…)

Stone also attempts to bolster his status as a consumer by citing *Ford v. ChartOne, Inc.*'s holding that a patient was involved in a consumer transaction when he purchased his own medical records for purposes of personal injury litigation. *Ford*, *supra*, 908 A.2d at 82-84. But Ford is readily distinguishable on its facts: medical records are "goods," while employment is not. We held that Ford's purchase of his medical records was a consumer transaction "[n]otwithstanding his pecuniary motivation" because Ford was not a merchant engaged in the business of buying and selling medical records, but rather an individual pursuing personal injury litigation, and that the medical records were being "use[d] for personal . . . purposes." D.C. Code § 28-3901 (a)(2)(B) (2015 Supp.). Thus, *Ford* only stands to reinforce the principle that the CPPA protects consumers; it does not speak to the question of whether *employment* is a good or a service.

---

(…continued)

time on appeal. *Long v. United States*, 83 A.3d 369, 381 n.17 (D.C. 2013), *as amended* (Jan. 23, 2014). In any event, even if this did make appellees' job offer a "business opportunity," that "business opportunity" would not be a *consumer* "business opportunity," since Stone would not be using it for "personal, household, or family purposes." D.C. Code § 28-3901 (a)(2)(B) (2015 Supp.). While it might seem odd to include such a phrase within a consumer statute, it does make for completeness in the definition of societal economic output, and it may not be inconceivable that a "business opportunity" could be sought in a consumer context.

It is not surprising that virtually without exception, courts in other jurisdictions have rejected arguments that their consumer protection statutes encompass employment.[9]  *See* Consumer Protection and the Law § 4:14 ("Courts in Georgia, Massachusetts, Nebraska, North Carolina, and South Carolina have [] held that disputes arising out of the employer/employee relationship were not intended to be included with the scope of their respective [consumer protection] statutes") (citing cases).

"Employment is not a consumer item."  *Larson v. Tandy Corp.*, 371 S.E.2d 663, 666 (Ga. Ct. App. 1988).  In addressing the recent amendments to the CPPA, the Committee Report was specific as part of its explanation of the revised definition of "consumer" in stating that "[i]t is the intention of the Committee that private actions under the CPPA remain confined to those brought by consumers as that term is generally understood and as refined and expanded here by these amendments."[10]  COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON PUBLIC

---

[9]  Although those cases have not dealt with the precise "business opportunities" language that exists in the CPPA, consumer protection laws tend to share common principles across the country.

[10]  The word "expanded" referred to amendments designed to explicitly permit non-profit and public interest organizations and those who purchased goods

(continued…)

SERVICES AND CONSUMER AFFAIRS, Report on Bill 19-0581, the "Consumer Protection Amendment Act of 2012," at 3, November 28, 2012. The Council has demonstrated by its numerous laws governing the employment relationship that it knows how to encompass that relationship within a statute. It clearly has not done so here.

Although Stone's allegation of a statutory injury is sufficient for standing purposes, he fails to state a legally viable claim. The order of the trial court dismissing Stone's complaint is therefore

*Affirmed.*[11]

---

(…continued)
for test and evaluation to bring suit under the CPPA. D.C. Code §§ 28-3901 (a)(2)(B)(ii), -3905(k)(1)(B)-(D) (2015 Supp.).

[11] Also pending before us is a motion by Stone to strike certain portions of Landis's brief. We do not consider or take into account the matters contained in those portions of the brief, other than the litigation described in footnote 1, and therefore deny the motion as moot.