*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CV-0624

TIRUWORK WENDEMU, APPELLANT,

v.

BIRIHAN TESEMA, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2021-CA-001029-V)

(Hon. Heidi M. Pasichow, Trial Judge)

(Submitted September 21, 2023                    Decided November 3, 2023[*])

*Anne K. Howard* for appellant.

*Stephen P. Ollar* for appellee.

Before BECKWITH, ALIKHAN, and SHANKER, *Associate Judges*.

SHANKER, *Associate Judge*: Appellee Birihan Tesema brought a negligence suit against appellant Tiruwork Wendemu in Superior Court after Ms. Wendemu's

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. Upon consideration of a motion to publish filed by appellee Birihan Tesema, we grant the motion and publish this Opinion. Judge AliKhan did not participate in this vote.

car rear-ended Ms. Tesema's car. During a deposition of Ms. Wendemu, her counsel, Michael O'Shea, instructed her not to answer two types of questions: (1) questions seeking the facts underlying an affirmative defense that Ms. Wendemu had asserted and (2) questions about whether Ms. Wendemu had sought medical treatment after the accident.

Ms. Tesema moved to compel answers to the questions and for sanctions, asserting that Mr. O'Shea's instructions not to answer were contrary to the civil rules of procedure. The Superior Court agreed. It concluded that Mr. O'Shea violated Super. Ct. Civ. R. 30(c)(2) and, on a subsequent renewed motion for sanctions, imposed sanctions on Ms. Wendemu under, as it appears to us, Super. Ct. Civ. R. 30(d)(2).[1]

Ms. Wendemu appeals and Ms. Tesema asks this court to impose further sanctions on the ground that the appeal is frivolous. We affirm, concluding that Ms. Wendemu has not proffered a valid basis for Mr. O'Shea's instructions not to

---

[1] We address below the uncertainty regarding the basis for the sanctions. The parties also appear to be uncertain about whether the Superior Court sanctioned Ms. Wendemu or Mr. O'Shea. Because the trial court's order refers to "[d]efendants," we assume the court sanctioned Ms. Wendemu. Regardless, because Rule 30(d)(2) permits sanctions against any "person," Super. Ct. Civ. R. 30(d)(2), our analysis does not turn on whether the sanctions were directed at Ms. Wendemu or at Mr. O'Shea.

answer and that the Superior Court was within its discretion in sanctioning the misconduct. We decline to impose sanctions for the filing of this appeal.

## I.    Background

### A.

The underlying dispute—the facts of which are not central to the issues on appeal—arose out of a car accident. Ms. Tesema alleged that Ms. Wendemu negligently rear-ended her vehicle. Ms. Wendemu, in her answer, reserved the right to raise a variety of affirmative defenses, including assumption of risk, untimeliness under the applicable statute of limitations, and unavoidable accident. The parties have since settled the case.

### B.

As relevant to this appeal, Ms. Tesema deposed Ms. Wendemu in the course of the litigation. At the deposition, Ms. Wendemu refused to answer two types of questions based on Mr. O'Shea's objections and instructions.

First, Mr. O'Shea objected when Ms. Tesema's counsel, Stephen Ollar, asked Ms. Wendemu whether she had "any facts that Ms. Tesema . . . assumed the risk of this collision?" Mr. O'Shea instructed his client "not to answer" because the question sought a "legal conclusion" and Ms. Wendemu was "not going to know" the answer. Mr. Ollar resisted the objection, explaining that Mr. O'Shea could not "instruct this witness not to answer a question unless it's privileged." Counsel for

both sides then argued over whether the question sought a legal conclusion, with Mr. O'Shea eventually asserting that the sought-after information fell "squarely within the purview of [his] work product . . . as an attorney."

Mr. O'Shea instructed Ms. Wendemu not to answer a second time, when Mr. Ollar asked: "[d]id you ever seek any medical treatment for any injuries arising out of this collision?" This time Mr. O'Shea issued the instruction because Ms. Wendemu was a defendant and was "not making [a] claim for injuries." Mr. O'Shea then prompted Mr. Ollar to move on, saying "[n]ext question." Mr. Ollar responded: "No. No. 100 percent not." When the deposition continued, Mr. Ollar asked whether Ms. Wendemu was "injured in this collision." Mr. O'Shea once again objected and instructed Ms. Wendemu not to answer. Mr. O'Shea did not invoke any form of privilege but reiterated that Ms. Wendemu was "not a plaintiff" and was "not making a claim for damages."

At the conclusion of the deposition, Mr. Ollar stated that he was keeping the deposition open because "responsive answers weren't provided," and he expressed his intent to file a motion to compel. Mr. O'Shea objected to keeping the deposition open because "[a]ll answers were provided."

As her counsel had previewed, Ms. Tesema moved to compel the deposition testimony and for sanctions. Ms. Wendemu opposed Ms. Tesema's motion and requested an oral hearing.

## C.

The Superior Court granted Ms. Tesema's motion to compel answers to the questions and initially denied, without prejudice, the concomitant request for attorneys' fees as sanctions.

In its order, the trial court found that Ms. Tesema's "counsel's questions were relevant and sought the discovery of nonprivileged information relating to [Ms. Wendemu's] affirmative defenses." The court explained that questions seeking "legal conclusion[s] are not appropriate but questions seeking to elicit the factual basis for positions that may be taken during the trial are appropriate."

The court denied the sanctions without prejudice because the motion lacked "an accounting of its request for attorneys' fees in conjunction with the Laffey Matrix" and a "description of the tasks undertaken in the ten hours allegedly spent drafting" the motion.[2] The court ordered a reconvened deposition and subsequently conducted a status hearing during which it declined to limit the scope of the upcoming deposition.

---

[2] "The *Laffey* matrix[ is] a schedule of charges based on years of experience developed in *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *rev'd on other grounds*, 746 F.2d 4 (D.C. Cir. 1984)." *Ill. Farmers Ins. Co. v. Hagenberg*, 167 A.3d 1218, 1236 n.20 (D.C. 2017) (alteration in original) (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1105 (D.C. Cir. 1995)).

After the reconvened deposition wherein Ms. Wendemu answered all of Mr. Ollar's questions, Ms. Tesema filed a renewed motion for sanctions for fifteen hours of attorney work. The court granted the motion and ordered Ms. Wendemu to pay Mr. Ollar's attorneys' fees and costs in the amount of $6,433.76—the sum of fifteen hours of work incurred in filing Ms. Tesema's motion and the filing fee. In its order, the court detailed Mr. O'Shea's conduct at the deposition and reiterated its prior finding that Mr. Ollar's questions were relevant, sought non-privileged information, and "were proportional to the needs of the case." The court also found that Ms. Tesema had made a good-faith effort to resolve the dispute before moving to compel. Ms. Wendemu moved for reconsideration and requested an oral hearing, both of which the court denied.

Ms. Wendemu now appeals the order granting the renewed motion for sanctions, and Ms. Tesema asks this court to sanction Mr. O'Shea under D.C. App. R. 38 for filing the appeal.

## II. Analysis

This appeal raises four sets of issues:

(1) Whether Ms. Wendemu violated Rule 30(c)(2) by refusing to answer Mr. Ollar's questions regarding the assumption-of-risk affirmative defense, and whether the Superior Court abused its discretion by sanctioning Ms. Wendemu for that refusal;

(2) Whether Ms. Wendemu violated Rule 30(c)(2) by refusing to answer Mr. Ollar's questions regarding any medical treatment she sought after the accident, and whether the Superior Court abused its discretion by sanctioning Ms. Wendemu for that refusal;

(3) Whether sanctions were nevertheless inappropriate either because the Superior Court did not hold an oral hearing or because the amount was too great; and

(4) Whether this court should sanction Mr. O'Shea under D.C. App. R. 38 for filing this appeal.

After discussing the legal framework and standards of review, we address each issue in turn.[3]

## A. Legal Framework

The parties reference three distinct, yet sometimes overlapping, legal authorities for imposing sanctions or awarding expenses: Rule 30(d)(2),

---

[3] Ms. Wendemu also challenges the trial court's denial of her motion for reconsideration. Ms. Tesema argues that Ms. Wendemu waived the argument by not articulating a clear legal basis for her challenge. We agree. Ms. Wendemu fails to include any citations to the record or law beyond the standard of review. *See In re Johnson*, 275 A.3d 268, 281 (D.C. 2022) (treating an argument as waived because it consisted of only "vague one-line conclusory assertions" and "failed to cite authority in this jurisdiction or any other [for] support"); D.C. App. R. 28(a)(10). In any event, Ms. Wendemu's appeal of the sanctions order encompasses all of her disagreements with the denial of her motion for reconsideration.

Rule 37(a)(5)(A), and courts' inherent power to impose sanctions. Although all three avenues to relief may sometimes apply to the same conduct, *see Yeh v. Hnath*, 294 A.3d 1081, 1087 (D.C. 2023), they nonetheless implicate different legal standards.

Rule 30(d)(2) empowers courts to impose "appropriate sanction[s]" when someone "impedes, delays, or frustrates the fair examination of the deponent." Super. Ct. Civ. R. 30(d)(2). The rule confers substantial discretion on trial courts in determining whether specific conduct during a Rule 30 deposition warrants sanctions. *See id.* ("The court *may* impose an appropriate sanction . . . ." (emphasis added)); *In re Harrington*, 283 A.3d 714, 719-20 (D.C. 2022) (explaining, in the context of a different sanctions rule, that the use of the word "may" reflects discretionary authority).

By contrast, Rule 37(a)(5)(A) applies only after a party has prevailed on a motion to compel and limits courts to awarding "reasonable expenses incurred in making the motion." Super. Ct. Civ. R. 37(a)(5)(A). In further contrast to Rule 30(d)(2), courts "must" award expenses under Rule 37(a)(5)(A) unless (1) "the movant filed the motion before attempting in good faith to obtain the discovery without court action;" (2) "the opposing party's response or objection was substantially justified;" or (3) "other circumstances make an award of expenses unjust." Super. Ct. Civ. R. 37(a)(5)(A).

Beyond the Superior Court Rules of Civil Procedure, courts may, in their discretion, award attorneys' fees where "the conduct of the nonprevailing party is willfully fraudulent, in bad faith, vexatious, wanton, or oppressive." *Roos v. LaPrade*, 444 A.2d 950, 951 (D.C. 1982) (citing *1901 Wyo. Ave. Coop. Ass'n v. Lee*, 345 A.2d 456, 464-65 (D.C. 1975)). We need not consider this avenue to relief because, although both parties discuss it, the trial court did not.

The trial court referenced both Rule 30(d)(2) and Rule 37(a)(5)(A) in its order and did not explicitly state which rule it was relying on in imposing sanctions. Because we find that the trial court's sanctions were proper under Rule 30(d)(2), we need not consider whether they were also proper under Rule 37(a)(5)(A). "In the absence of 'procedural unfairness, we may affirm a judgment on any valid ground, even if that ground was not relied upon by the trial judge.'" *Stone v. Landis Constr. Co.*, 120 A.3d 1287, 1289 n.6 (D.C. 2015) (quoting *Pietrangelo v. Wilmer Cutler Pickering Hale & Dorr, LLP*, 68 A.3d 697, 711 n.10 (D.C. 2013)). No procedural unfairness exists here because the court referenced Rule 30(d)(2) in its order and both parties discuss it in their briefs. *See id.*

## B. Standard of Review

This court reviews orders imposing sanctions under Rule 30(d)(2) for abuse of discretion. *See Yeh*, 294 A.3d at 1087-88 ("Whichever authority a court relies on to impose a fee-shifting sanction, this court reviews the sanction order for an abuse

of discretion."); *see also Sec. Nat'l Bank of Sioux City v. Jones Day*, 800 F.3d 936, 941 (8th Cir. 2015) ("We review the imposition of Rule 30(d)(2) sanctions for abuse of discretion."). That discretion, however, "is not unbounded." *Yeh*, 294 A.3d at 1088. "A court 'by definition abuses its discretion when it makes an error of law.'" *Frankel v. D.C. Off. of Plan. & Econ. Dev.*, 110 A.3d 553, 558 (D.C. 2015) (quoting *Ford v. ChartOne, Inc.*, 908 A.2d 72, 84 (D.C. 2006)). And we review errors of law de novo. *Malik Corp. v. Tenacity Grp., LLC*, 961 A.2d 1057, 1060 (D.C. 2008).

Accordingly, we review the Superior Court's conclusion that Mr. O'Shea violated Rule 30(c)(2)—which in this case poses a purely legal question—de novo. If Mr. O'Shea did violate Rule 30(c)(2), we review the Superior Court's decision to sanction Ms. Wendemu for that violation under Rule 30(d)(2) for abuse of discretion. As for Ms. Wendemu's procedural objections to the sanctions, we review de novo whether Rule 30(d)(2) requires an oral hearing before a court may impose sanctions because it poses a legal question and we review the amount of sanctions imposed for abuse of discretion.

## C.    Discussion

Rule 30(c)(2) restricts how a party may object during a deposition and limits the circumstances in which a person may instruct the deponent not to answer a question. Objections made during the examination "must be noted on the record, but the examination still proceeds" despite the objection. Super. Ct. Civ. R. 30(c)(2).

The only permissible grounds specified in the rule for instructing a deponent not to answer a question are (1) "to preserve a privilege," (2) "to enforce a limitation ordered by the court," and (3) "to present a motion under Rule 30(d)(3)." *Id.* The rule thus favors permitting the deposition to continue even where a party raises a valid objection.

Rule 30(d)(2), as explained above, empowers trial courts to sanction a person who "impedes, delays, or frustrates the fair examination of the deponent." Super. Ct. Civ. R. 30(d)(2). Instructing a deponent not to answer questions during a deposition without proper grounds may serve as the basis for sanctions under Rule 30(d)(2). *See, e.g.*, *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 333 F.R.D. 302, 307 (S.D.N.Y. 2019) (imposing Rule 30(d)(2) sanctions because a party violated Rule 30(c)(2) by instructing a deponent not to answer a question based on relevancy grounds); *see also Sec. Nat'l Bank of Sioux City*, 800 F.3d at 942 (explaining that Rule 30(d)(2) sanctions serve to deter excessive objections).[4]

---

[4] We look to federal courts' interpretations of Fed. R. Civ. P. 30(c)(2) and 30(d)(2) as persuasive authority for our interpretation of D.C.'s parallel procedural rules. "When a local rule and a federal rule are identical, or nearly so, we will construe the local rule in a manner consistent with the federal rule to the extent possible under binding precedent . . . ." *Montgomery v. Jimmy's Tire & Auto Ctr., Inc.*, 566 A.2d 1025, 1027 (D.C. 1989). Rule 30(c)(2) and (d)(2) mirror Fed. R. Civ.

## 1. Questions Related to the Assumption-of-Risk Affirmative Defense

Ms. Wendemu argues that, notwithstanding the text of Rule 30(c)(2), attorneys may instruct deponents not to answer questions that call for non-privileged legal conclusions.[5] In support of this contention, she marshals some case law, non-binding though it is. These cases suggest that while parties may ask so-called legal-contention questions, like the questions at issue here, such inquiries must be channeled through the interrogatory process—not through depositions. *See Lance, Inc. v. Ginsburg*, 32 F.R.D. 51, 53 (E.D. Pa. 1962); *Rifkind v. Superior Court*, 27 Cal. Rptr. 2d 822, 824-27 (Ct. App. 1994).

We are unpersuaded by these cases. To the extent they offer reasonable policy rationales for precluding legal-contention questions in depositions, they predate or otherwise do not involve the modern version of Rule 30(c)(2), which derives from the 1993 amendments to the Federal Rules of Civil Procedure. Advisory Committee

---

P. 30(c)(2) and (d)(2). *Compare* Super. Ct. Civ. R. 30(c)(2), (d)(2), *with* Fed. R. Civ. P. 30(c)(2), (d)(2).

[5] At the deposition and before the trial court, Ms. Wendemu and Mr. O'Shea argued that the objections were justified by the work-product doctrine, a form of privilege. But Ms. Wendemu does not pursue that argument in this court, so we do not consider it.

Notes, Amendments to Fed. R. Civ. P. 30, 146 F.R.D. 401, 664-65 (1993).[6] That modern rule governs here, and it explicitly limits refusals to answer deposition questions to the three circumstances discussed above: invoking a privilege, enforcing a pre-existing court order, or bringing a motion under Rule 30(d)(3). *Id.* Ms. Wendemu does not assert any of those circumstances before this court. Adhering to the text of Rule 30(c)(2), we hold that legal-contention questions provide no basis for instructing a deponent not to answer.

Since 1993, federal courts have adopted the same position with respect to Fed. R. Civ. P. 30(c)(2). *See, e.g.*, *Shreves v. Frontier Rail Corp.*, No. 1:19-cv-03012-SMJ, 2021 WL 6206635, at *3-4 (E.D. Wash. Mar. 23, 2021) ("In the context of a deposition, a question calling for a legal conclusion does not provide a basis for counsel to instruct the deponent not to answer." (citing Fed. R. Civ. P. 30(c)(2))); *Colon v. N.Y.C. Hous. Auth.*, No. 16-CV-4540 (VSB) (OTW),

---

[6] *Lance* predates the 1993 amendments to Fed. R. Civ. P. 30(c), and *Rifkind* never discusses the rule or its modern language. *See Lance*, 32 F.R.D. at 51; *Rifkind*, 27 Cal. Rptr. 2d at 824-27; *see also Olsen-Ivie v. K-Mart*, No. 2:17-cv-00255-DB-PMW, 2018 U.S. Dist. LEXIS 24194, at *1-2 (D. Utah Feb. 12, 2018) (concerning a pre-deposition protective order rather than an instruction not to answer during a deposition). The Advisory Committee amended Rule 30(c) in 1993 to reduce objections and instructions not to answer during depositions, which the Committee feared could "unduly prolong[ ]" and "unfairly frustrate[ ]" depositions. *See* Advisory Committee Notes, Amendments to Fed. R. Civ. P. 30, 146 F.R.D. 401, 664-65 (1993); *see also* 8A Charles Alan Wright et al., *Federal Practice and Procedure* § 2113 (3d ed. 2023) (recounting the motivations for the 1993 amendments).

2019 WL 4291667, at \*3-4 (S.D.N.Y. Sept. 11, 2019) (sanctioning a party under Fed. R. Civ. P. 30(d)(2) for refusing to answer, among other questions, a legal-contention inquiry and unilaterally cutting off the deposition because "seeking a legal conclusion . . . is not a listed basis under Rule 30(c)(2) to instruct the deponent not to answer"); *cf. Sec. Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 34 (D. Conn. 2003) (stating, in the context of a Rule 30(b)(6) deposition, that "[i]t is of no consequence that contention interrogatories may be the more appropriate route to obtain the information as nothing precludes a deposition either in lieu of or in conjunction with such interrogatories").

We decline to read a new exception into Rule 30(c)(2) that would cover Mr. O'Shea's conduct. We therefore hold that Mr. O'Shea violated Rule 30(c)(2) by instructing Ms. Wendemu not to answer questions regarding her factual basis for an assumption-of-risk affirmative defense.

Having concluded that Mr. O'Shea's conduct violated Rule 30(c)(2), we turn to whether the Superior Court exceeded its discretion by sanctioning Ms. Wendemu under Rule 30(d)(2). Courts typically reserve sanctions under Rule 30(d)(2) for "severe, repeated, and pervasive" misconduct. *Doe I v. Exxon Mobil Corp.*, 539 F. Supp. 3d 59, 72 (D.D.C. 2021) (internal quotation marks omitted) (quoting *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182, 196-97 (E.D. Pa. 2008)). But "[t]he question, of course, is not whether this [c]ourt . . . would as an original matter have [imposed

the sanction]; it is whether the [trial court] abused its discretion in so doing." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976). The Supreme Court has cautioned reviewing courts against the "natural tendency," based on "the benefit of hindsight," to reverse sanctions orders based on a view that the sanctioned party will have already felt "duly chastened" by the trial court's rulings. *Id.*

We discern no abuse of discretion in the trial court's sanctioning of Ms. Wendemu for Mr. O'Shea's violation of Rule 30(c)(2). Ms. Wendemu's refusal to answer questions required Ms. Tesema to file a motion to compel and the parties to reconvene for a second deposition, delaying the discovery process. True, Ms. Wendemu and Mr. O'Shea covered the cost of the second deposition (which was conducted remotely) and fully answered all of Mr. Ollar's questions in a process that took only four minutes. But litigating the motion to compel involved hours of work, and the reconvened deposition took place over three months later. Whether or not this court would have sanctioned such conduct in the first instance, the trial court was within its discretion in determining that resolving the motion to compel and conducting a second deposition delayed discovery and warranted sanctions.

Ms. Wendemu argues that even if she erred in refusing to answer Mr. Ollar's question, she did so based on a good-faith belief in her legal argument. Good faith, however, is generally inapplicable to a Rule 30(d)(2) sanctions award in this context.

*See, e.g.*, *Ollison v. Wexford Health Sources, Inc.*, 337 F.R.D. 165, 171 (C.D. Ill. 2020) (holding that Rule 30(c)(2) "contains no scienter requirement; the Rule states, 'A person may instruct a deponent not to answer only when necessary to . . . enforce a limitation ordered by the court . . .' It does not say to enforce a limitation 'that a person believes, or reasonably believes' ordered by the court. In other words, counsel who guesses wrongly about a limitation ordered by the court, even if such a guess was reasonable and made in good faith, still violates Rule 30(c)(2)'s requirement that a deponent answer questions over objection, rather than refuse to answer.").[7]

## 2. Medical Questions

Ms. Wendemu asserts that the trial court erred in compelling her answers to the deposition questions regarding medical treatment because the questions were not probative. We are unpersuaded by this argument for two reasons.

First, the question whether the trial court erred in granting the motion to compel is not before us. Ms. Wendemu appeals only the sanctions order. And any claim regarding the motion to compel would likely be moot because the parties have settled the underlying case. *Cf. U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,

---

[7] We do not suggest that the reasonableness of a party's position on a close legal question regarding, for example, the applicability of a privilege would not be a relevant factor in the trial court's discretionary decision whether to impose sanctions.

513 U.S. 18, 25 (1994) ("Where mootness results from settlement, . . . the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice.").

Second, a lack of probative value or relevancy, by itself, provides insufficient justification to instruct a deponent not to answer. *See* Super. Ct. Civ. R. 30(c)(2); *see also In re Flint Water Cases*, 53 F.4th 176, 204-05 (6th Cir. 2022) (parsing the differences between evidence admissible at trial and questions appropriate during a deposition). As discussed above, Rule 30(c)(2) limits when a person may instruct a deponent not to answer a question to three situations only. *See* Super. Ct. R. Civ. 30(c)(2). None of them involves lack of relevancy. *See id.*

It may be that precluding admission of testimony at trial after allowing a deposition to continue might in some cases provide an inadequate remedy to deponents. For example, if a lawyer needlessly pries into a deponent's private medical details, the ultimate inadmissibility of such evidence at trial would offer the deponent cold comfort. They would still have been forced to disclose sensitive information. In such a situation, however, the proper remedy is for the aggrieved party to halt the deposition and move to terminate or limit the deposition under Rule 30(d)(3). *See id.*; *Redwood v. Dobson*, 476 F.3d 462, 467-68 (7th Cir. 2007). Rule 30(c)(2) specifically contemplates this option. *See* Super. Ct. R. Civ. 30(c)(2).

But we see no evidence of such misconduct here, and Ms. Wendemu did not file a Rule 30(d)(3) motion.

Ms. Wendemu argues that no violation of Rule 30(c)(2) occurred because D.C. Code § 14-307's doctor-patient privilege justified Mr. O'Shea's instruction not to answer. We are not persuaded because Section 14-307 does not apply to patients. Section 14-307 provides, in relevant part, that "[p]hysicians," among other medical professionals and counselors, "shall not be permitted . . . to disclose any confidential information that the [physician] has acquired in attending the client in a professional capacity and that was necessary to enable the [physician] to act in that capacity . . . ." D.C. Code § 14-307(b). The section protects patients from disclosures by their doctors. *See id.*; *Street v. Hedgepath*, 607 A.2d 1238, 1246 (D.C. 1992). Section 14-307 does not protect patients from being forced to disclose information themselves.

Because neither Section 14-307 nor Ms. Wendemu's relevancy argument justifies Mr. O'Shea's instruction not to answer questions regarding medical treatment, we hold that the instruction violated Rule 30(c)(2).

We also conclude that the trial court acted within its discretion in sanctioning Ms. Wendemu under Rule 30(d)(2) for Mr. O'Shea's instruction not to answer questions regarding her medical treatment. The instruction not to answer was

improper, as the statute Ms. Wendemu invokes does not apply to her and there was no colorable claim of privilege.

Ms. Wendemu urges us to reverse the sanctions because "significant privacy grounds [ ] justified" Mr. O'Shea's objections irrespective of their legal merit. In support of this argument, Ms. Wendemu relies on *Spellman v. Am. Sec. Bank, N.A.*, 579 A.2d 151 (D.C. 1990), for the proposition that this court denies requests for attorney's fees in cases involving significant privacy issues. *Spellman*, however, involved a predecessor to Rule 37(a)(5)(A), not Rule 30(d)(2). *See id.* at 151, 153 n.7. It also did not concern privacy grounds but rather Ms. Spellman's ability to testify in light of her medical condition. *See id.* It thus does not support Ms. Wendemu's proposition.[8]

### 3. Oral Hearing and the Amount of the Sanctions

Ms. Wendemu also raises two procedural objections. We find neither one persuasive.

---

[8] Ms. Wendemu also points to *Edwards v. Climate Conditioning Corp.*, 942 A.2d 1148 (D.C. 2008), to support her argument that sanctions were not warranted. She argues that the *Edwards* court affirmed a decision imposing sanctions where a party violated the trial court's order granting a motion to compel, *see id.* at 1150-51, 1154, whereas she complied with the court's order. But *Edwards* involved Rule 37(b), which specifically pertains to sanctions for violating an order to compel. *See id.* at 1152-53. *Edwards* does not suggest that a violation of a court order is a prerequisite for sanctions under Rule 30(d)(2).

First, Ms. Wendemu asserts that the trial court erred by failing to conduct an oral hearing before imposing sanctions. She cites Rule 37(a)(5)(A), which states that courts shall impose expenses only "after giving an opportunity to be heard." Super. Ct. Civ. R. 37(a)(5)(A). But sanctions were appropriate here under Rule 30(d)(2) and, unlike Rule 37(a)(5)(A), Rule 30(d)(2) lacks language requiring an opportunity to be heard. *See supra* Part II.A; Super. Ct. Civ. R. 30(d)(2). Even if Rule 30(d)(2) requires some opportunity to be heard—and we offer no opinion on whether it does—the opportunity to brief the issue provided to both parties in the trial court satisfied the requirement. *Cf. Mathews v. Eldridge*, 424 U.S. 319, 344-45, 349 (1976) (holding that the opportunity to be heard required by due process did not necessitate an oral or evidentiary hearing before the termination of disability benefits). Indeed, it appears that even Rule 37(a)(5)(A) demands no more than this. *See* Fed. R. Civ. P. 37 advisory committee's note to 1993 amendment ("'[A]fter opportunity for hearing' is changed to 'after affording an opportunity to be heard' to make clear that the court can consider such questions on written submissions as well as on oral hearings."); 8D Charles Alan Wright et al., *Federal Practice and Procedure* § 2288 (3d ed.).

Second, Ms. Wendemu opposes the trial court's determination of the amount of sanctions. She argues that, under the circumstances, (1) the expenses submitted by Ms. Tesema were disproportionate to the motion and (2) the ultimate amount was

unreasonable. We discern no error because Rule 30(d)(2) does not limit the sanctions amount to the costs Ms. Tesema reasonably incurred. Rule 30(d)(2) permits trial courts to impose "appropriate sanction[s]" for misconduct during a deposition. Super. Ct. Civ. R. 30(d)(2).

Ms. Wendemu contends that the fifteen hours Ms. Tesema's counsel spent drafting the motion to compel and the reply brief were excessive. She also argues that, at the time, reply briefs were not permitted as a matter of course. To support these points, Ms. Wendemu relies on Rule 37(a)(5)(A), which speaks of "reasonable expenses incurred." Super. Ct. Civ. R. 37(a)(5)(A). But even if we were to agree with these arguments with respect to Rule 37(a)(5)(A), Rule 30(d)(2) does not require the trial court to tether the amount of the sanctions to the reasonable expenses incurred. Although the rule states that an "appropriate sanction" may "includ[e] the reasonable expenses and attorney's fees incurred by any party," it does not suggest that reasonable expenses are the maximum sanction. Super. Ct. Civ. R. 30(d)(2); *see Horton v. Maersk Line, Ltd.*, 294 F.R.D. 690, 697 n.14 (S.D. Ga. 2013) ("The full scope of sanctions available under Rule 30(d)(2) is not expressly described in the text of the rule." (internal quotation marks omitted)).

Ms. Wendemu adds that, in this case, sanctioning her for $6,433.76 is unreasonable because the dispute settled for merely $17,500 and Ms. Tesema did not learn any valuable information from the answers to the deposition questions.

The trial court, however, did not have the benefit of this hindsight. At the time, the parties had not yet settled the underlying case, and Ms. Tesema had sought $100,000 in damages. Nor could the court have predicted that the case would settle without additional discovery disputes. It may have felt that the circumstances required a harsher sanction to ensure proper conduct throughout future discovery. Finally, we cannot say, particularly because the litigation did not proceed in the trial court, that none of the answers could have yielded valuable information. Ms. Tesema, for her part, asserts that because Ms. Wendemu claimed to have suffered no injury in the accident, whether she sought medical treatment could have undercut her credibility or led to further evidence regarding the severity of the accident. Irrespective of how the situation looks to us now, we cannot say that the Superior Court abused its discretion ex ante. *Cf. Nat'l Hockey League*, 427 U.S. at 642-43 (warning reviewing courts against applying "the benefit of hindsight" to reverse trial court sanctions).

### 4. Additional Sanctions

The final piece of this case is Ms. Tesema's request that we sanction Mr. O'Shea under D.C. App. R. 38 for filing this appeal. We decline because, in our view, the appeal does not rise to the required level of frivolity.

If an attorney brings a "frivolous" appeal, this court "may . . . impose appropriate sanctions on the offending party, the attorney, or both." D.C. App. R. 38. Frivolous appeals include those that are "wholly lacking in substance," are

not "based upon even a faint hope of success on the legal merits of the appeal," or are "utterly without merit." *Slater v. Biehl*, 793 A.2d 1268, 1278 (D.C. 2002) (internal quotation marks omitted) (first quoting *Pine View Gardens, Inc. v. Jay's Frosted Foods, Inc.*, 299 A.2d 536, 537 (D.C. 1973); then quoting *Tupling v. Britton*, 411 A.2d 349, 351 n.4 (D.C. 1980)). The rule's use of the word "may" reflects discretionary authority. D.C. App. R. 38; *see In re Harrington*, 283 A.3d 714, 720 (D.C. 2022).

Ms. Tesema urges us to exercise that discretion here because, in her view, the appeal merely "doubles down with the misguided hope" of success "without any persuasive authority, indifferent to the unnecessary work that [it] imposes on" counsel and the court. We disagree. Although we ultimately find Ms. Wendemu's arguments unpersuasive for the reasons detailed above, we do not consider the appeal so frivolous as to warrant sanctions.

### III.   Conclusion

For the foregoing reasons, we affirm the Superior Court's order imposing sanctions and deny Ms. Tesema's request for additional sanctions.

*So ordered.*